JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-Defendant Derrick Bacon ("Appellant") appeals from his convictions for attempted burglary and possession of criminal tools. For the reasons set forth below, we affirm.
 {¶ 2} On August 11, 2004, Appellant was indicted on two counts: one count for attempted burglary in violation of R.C. 2929.02 and R.C. 2911.12
and one count of possessing criminal tools in violation of R.C. 2923.24. Appellant was arraigned, appointed counsel and pled not guilty to all counts in the indictment.
 {¶ 3} On September 7, 2004, Appellant filed a Motion to Suppress evidence based on lack of reasonable suspicion for investigatory stop, search and lack of probable cause to arrest, as well as a motion to suppress, illegally obtained, and unreliable statements.
 {¶ 4} On September 14, 2004, Sulaiman Roy Graham ("Graham") filed a notice of appearance on behalf of Appellant.
 {¶ 5} The next day, the Appellant appeared in court with attorney Chris Maher on Appellant's pro se motion to remove counsel. The court granted Appellant's motion withdrawing Chris Maher as counsel. At that time, Appellant informed the court that he wanted Graham to represent him. Unaware of Graham's recent filing of a notice of appearance, the court appointed Michael Shaughnessy as counsel for Appellant until, and if, Appellant retained Graham as counsel.
 {¶ 6} On September 29, 2004, Graham failed to appear at a scheduled pretrial hearing.
 {¶ 7} On October 6, 2004, Appellant filed a pro se motion to dismiss, which the court later denied. On this same date, the court filed its own motion to withdraw Graham as counsel and set a hearing for October 13, 2004 for its motion to remove counsel.
 {¶ 8} On October 13, 2004, Appellant appeared with attorney Graham. The court withdrew its motion to remove Graham as counsel pursuant to Appellant's preference to have Graham as his attorney. The trial remained scheduled for October 20, 2004. The court explained its refusal to continue the trial date by stating in its journal entry dated October 13, 2004:
 {¶ 9} "The court notes that this trial date was set 8/31/04 and already in place when Mr. Graham filed his notice of appearance on 9/14/04. * * * Finally, Mr. Shaughnessy was assigned by this court as counsel on 9/15/04, at which time the court was not aware of Mr. Graham's 9/14 notice of appearance."
 {¶ 10} On October 20, 2004, Appellant signed a jury waiver form and the case proceeded to trial. Appellant's Motion to Suppress was consolidated with the bench trial.
 {¶ 11} At trial, the state presented the testimony of Anthony Coleman, Officer Paul Doyle, Angela Jordan and Holly Douglas.
 {¶ 12} Anthony Coleman ("Coleman") testified that on July 20, 2004, he went to his girlfriend, Holly Douglas' ("Douglas") home between 11:30 a.m. and 12:30 p.m. Douglas was not home at the time Coleman arrived. Therefore, he waited for her arrival in his vehicle which was parked across the street. While waiting, Coleman witnessed a suspicious male on Douglas' front porch. He explained that he saw the male peek into the glass window on the front door and then traverse to the side of the house where he lost sight of the male for about thirty seconds. Then he witnessed the male exit down the driveway and turn right onto 200th
Street.
 {¶ 13} Coleman, wishing to obtain a description of the male, drove around the neighborhood looking for him. Once he found the male, he returned to Douglas' home and informed her of the current events. While speaking with her, he saw the male coming towards the house again. Therefore, Coleman telephoned the Euclid Police Department and gave a description of the male as African-American with a bald spot, wearing a white long-sleeved shirt and black pants while walking near 200th
Street.
 {¶ 14} Later, the police arrived at Douglas' home and Coleman identified the Appellant as the man he saw peeking into Douglas' front door window.
 {¶ 15} Officer Paul Doyle ("Officer Doyle"), a patrolman with the Euclid Police Department, testified that on July 20, 2004, he received a "suspicious male call." He explained that Coleman telephoned the Police Department and stated that he saw a male peeking into the windows of his girlfriend's house at 280 East 200th Street. He described the male as an African-American male wearing a white long-sleeved shirt and black pants. Officer Doyle was also informed that the male was walking on 200th
Street and then went eastbound on South Lake Shore Boulevard.
 {¶ 16} Officer Doyle, therefore, responded to the area, where he saw a male fitting the description given by Coleman. The male was later identified as the Appellant. As the Officer pulled the vehicle over, Appellant approached. Officer Doyle exited the vehicle and requested the Appellant's identification.
 {¶ 17} Officer Doyle then proceeded to ask Appellant a series of questions. He asked the Appellant his reason for being in the area and the Appellant responded he was walking around to get to know the area. Officer Doyle found Appellant's answer questionable, as Appellant also informed him that he lived quite a distance away. Officer Doyle then asked the Appellant if he had stopped anywhere during his walk and Appellant responded that he had not. Officer Doyle inquired as to whether Appellant had ever been arrested and he informed the officer that he was on probation for rape.
 {¶ 18} Officer Doyle concluded that Appellant's responses did not seem reasonable. Therefore, he sought Appellant's consent to conduct a pat down of the Appellant's outer clothing. Appellant agreed and Officer Doyle discovered a 7-inch screwdriver, a pair of gloves and a black knit hat with eye holes cut out. Officer Doyle sought an explanation for possession of these items from the Appellant, to which the Appellant responded that he always wore the items. Officer Doyle responded that, in light of the weather that day, 85 degrees and humid, he found Appellant's response questionable. Appellant explained that he used the screwdriver and gloves for construction work. Officer Doyle declined to accept Appellant's explanation, as the gloves and the screwdriver seemed inadequate for such work. Instead, Officer Doyle suggested that Appellant had peeked into the Douglas' house to rape someone. Officer Doyle then testified that Appellant responded that "he was not planning to rape anyone. He wanted to rob the place." Officer Doyle further testified that Appellant "claimed that he planned to break the window on the side door to gain entry. He said that he thought he would not be seen if he broke the window on the side of the house." The Appellant then informed the officer that he changed his mind and decided not to rob the house.
 {¶ 19} It was then that Officer Doyle handcuffed the Appellant and took him back to the scene so that Coleman could positively identify the Appellant. Officer Doyle then arrested the Appellant and transported him to the Euclid Police Department.
 {¶ 20} Angela Jordan ("Jordan") testified that she resided at 280 East 200th Street and was the mother of Douglas. She further testified that she had never seen the Appellant prior to the trial and had never invited him to her home.
 {¶ 21} Holly Douglas ("Douglas) testified that on July 20, 2004, she resided at 280 East 200th Street. She further testified that when she returned home from dropping her brother off at her aunt's house, Coleman informed her that he witnessed someone peeping into her front door, then walked to the side door and finally left the house. After the two stepped outside, she observed the male Coleman said was peeping into her house walking towards the two and then turned around. She later identified the male as the Appellant.
 {¶ 22} Thereafter the state rested its case. The defense then presented the testimony of the Appellant. The Appellant testified that on July 20, 2004 he walked from his fiance's home to 280 East 200th Street. He explained that he recently met a woman, named Gail, who suggested that she may be able to find him employment and supplied him with her address of 180 East 200th Street and told him he could stop by anytime. Appellant, wishing to meet with the woman, attempted to find the address given, but was only successful in finding 280 East 200th Street.
 {¶ 23} Believing this could perhaps be the correct address, Appellant testified that he went on the porch of 280 East 200th Street and knocked on the door. When no one answered, he peered into the window on the door and saw a light on in the back of the house. He then traversed to the side of the house. At that time, he noticed the garage door open with no vehicles inside. He, therefore, abandoned his search. He exited via the driveway and began walking the same direction he came. Appellant testified that, during his entire visit at the 280 East 200th Street residence, he noticed Coleman in his vehicle watching him.
 {¶ 24} While walking, Appellant observed Coleman drive past him. Appellant further testified that Coleman and Douglas also observed him on the side of the street after he left the residence.
 {¶ 25} During his walk, Appellant was stopped by Officer Doyle, who asked for the Appellant's identification. The Appellant complied and the officer began to ask Appellant a series of questions. Officer Doyle also asked Appellant whether he could search the Appellant and the Appellant consented. During the search, Officer Doyle discovered the ski mask, gloves and screwdriver. Thereafter, Officer Doyle handcuffed and placed the Appellant in the patrol car and another officer arrived at the scene.
 {¶ 26} According to the Appellant, while he was in the patrol car, he informed Officer Doyle that he was on parole for rape. Appellant testified that Officer Doyle accused him of going to the 280 East 200th
Street to commit a rape. Appellant responded that he had the articles because he worked in construction, not to commit a rape.
 {¶ 27} Appellant further testified that he never told Officer Doyle that he intended to rob the Douglas' home as Officer Coyle maintains. Instead, Appellant maintains that he always carried the ski mask, gloves and screwdriver with him as a "memento" to remind him of prison and that he does not want to return.
 {¶ 28} After Appellant was placed in the patrol car, Officer Doyle took him back to the residence located at 280 East 200th Street where Coleman identified him. Officer Doyle then transported him to the police station. The defense then rested its case.
 {¶ 29} After presentation of the evidence, the trial court denied Appellant's motion to suppress and the trial continued with closing statements. At the conclusion, the court returned a guilty verdict on both counts of the indictment. The trial court sentenced Appellant to a one year prison term on count one, attempted burglary, and a six month prison term on count two, possessing criminal tools, with each sentence to run concurrent.
 {¶ 30} Appellant now appeals his convictions and submits three assignments of error for our review.
 {¶ 31} The first assignment of error states:
 {¶ 32} "The evidence was not sufficient to sustain appellant's conviction of attempted burglary and possession of criminal tools."
 {¶ 33} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 34} The Appellant was charged and convicted of attempted burglary. R.C. 2923.02(A) defines attempt as follows:
 {¶ 35} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 36} "Criminal attempt" has been defined as "an act or omission constituting a substantial step in a course of conduct planned to culminate in the actor's commission of the crime but that falls short of completion of the crime." State v. Group, 98 Ohio St.3d 248,781 N.E.2d 980, 2002-Ohio-7247, citing State v. Woods (1976),48 Ohio St.2d 127, 357 N.E.2d 1059, paragraph one of the syllabus. "A `substantial step' requires conduct that is strongly corroborative of the actor's criminal purpose." Id.
 {¶ 37} The attempted underlying crime for which Appellant was convicted in this case is burglary, as is set forth in R.C. 2911.12(A)(2), which provides:
 {¶ 38} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 39} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 40} Appellant maintains that the state failed to establish that Appellant made a substantial step toward the commission of a crime, nor did he intend to commit a crime. We disagree.
 {¶ 41} The Supreme Court of Ohio in State v. Woods (1976),48 Ohio St.2d 127, 357 N.E.2d 1059, vacated in part on different grounds by Woods v. Ohio (1978), 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 1153, explained what constitutes a "substantial step" towards the commission of a crime by stating:
 {¶ 42} "To constitute a `substantial step,' the conduct must be `strongly corroborative of the actor's criminal purpose.' The application of this standard will of course depend upon both the intended crime and facts of the particular case. * * * But this standard does properly direct attention to overt acts of the defendant which convincingly demonstrated a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." Id. at 37.
 {¶ 43} In the instant matter, the trial court determined that the state presented sufficient evidence that convincingly demonstrated Appellant's firm purpose to burglarize Douglas' home. Coleman testified that he observed the Appellant "peeking through the window on the front door." He further testified that he witnessed the Appellant walk around to the side of the house, stay there for about thirty seconds, and then walk out the driveway and turn right down the street. Based upon his observations and his belief that Appellant's behavior was suspicious, Coleman notified the police of the Appellant's activities and provided them with a detailed description of Appellant's appearance and location.
 {¶ 44} Officer Doyle responded to Coleman's complaint and quickly discovered the Appellant, fitting the exact description and located in the area described. Upon questioning the Appellant, Officer Doyle found discrepancies in the Appellant's answers to investigatory inquiries. Subsequently, Officer Doyle requested, and the Appellant consented to, a pat down search of his person, in which Officer Doyle discovered a ski mask with holes cut out for eyes, gloves and a screwdriver. Upon further questioning regarding these objects, Appellant admitted to the Officer that he planned on robbing the house.
 {¶ 45} While Appellant denied admission concerning attempting robbery, the trial court determined, after hearing the testimony of both Officer Doyle and Appellant, that Officer Doyle's testimony proved more credible. The court stated the following:
 {¶ 46} "So then I also find the officer's testimony credible. And I think I mentioned this before on the motion to suppress, that I just don't think he would have made this comment that you intended to rob the place only and not commit a worse offense inside."
 {¶ 47} As the trier of fact is in a better position to determine the credibility of witnesses, we are limited to whether reasonable minds could reach the conclusion reached by the trier of fact. See State v.Tibbetts, 92 Ohio St.3d 146, 162, 749 N.E.2d 226, 2001-Ohio-132; Statev. Treesh, 90 Ohio St.3d 460, 484, 739 N.E.2d 749, 2001-Ohio-4. We find the trial court's determination of credibility reasonable.
 {¶ 48} Viewing the foregoing evidence in a light most favorable to the state, the trial court reasonably determined that there was sufficient evidence that the Appellant took substantial steps to forcibly enter Douglas' house while she was likely to be present and that he intended to commit a criminal offense once therein. As we find the trial court's conclusion reasonable, we do not find the trial court erred.
 {¶ 49} Within this assignment of error, Appellant also maintains that there was insufficient evidence to support his conviction for possession of criminal tools. In support of this argument, Appellant contends that the ski mask, gloves and screwdriver were the equivalent of a "memento for Appellant not to make the same mistakes that sent him to prison for 17 years." Further, Appellant asserts that he was not wearing the items and no evidence exists to establish he attempted to break into the house while wearing them.
 {¶ 50} As stated previously, when conducting review for sufficiency of the evidence, "we do not weigh the evidence; rather, our inquiry is limited to whether reasonable minds could reach the conclusion reached by the trier of fact." State v. Gross, 97 Ohio St.3d 121, 140,776 N.E.2d 1061, 2002-Ohio-5524. Issues concerning the weight given to the evidence and the credibility of witnesses are mainly for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 51} Viewing the evidence in a light most favorable to the state, we find that reasonable minds could have reached the same conclusion as the trial court, and found that Appellant's possession of a ski mask, gloves and screwdriver were for criminal purposes and not merely a "memento."
 {¶ 52} Furthermore, it is irrelevant whether the Appellant actually wore or used the tools during the crime. R.C. 2923.24(A) clearly states the following:
 {¶ 53} "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 54} Thus, the evidence need not establish that Appellant actually wore or used the ski mask, gloves or screwdriver to be found guilty of possession of criminal tools. Instead, the evidence need only establish that Appellant possessed the items with the purpose to use them criminally. A review of the record demonstrates that reasonable minds could reach the conclusion that Appellant possessed the items with the purpose to use them in the commission of a burglary.
 {¶ 55} Finally, Appellant argues within this assignment that his convictions for attempted burglary and possession of criminal tools were against the manifest weight of the evidence. We disagree.
 {¶ 56} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 57} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 58} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbsv. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 59} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 60} In this matter, we cannot conclude that the trial court lost its way. As stated previously, the court determined that Appellant's presence at Douglas' home, his possession of a ski mask, gloves and screwdriver, as well as the credible testimony of Officer Doyle that Appellant admitted to planning on robbing the house established that the Appellant attempted to commit a burglary and possessed criminal tools. After reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we find that the verdict is not against the weight of the evidence.
 {¶ 61} Accordingly, as we find that the evidence was sufficient to support Appellant's convictions for attempted burglary and possession of criminal tools and further find that the verdict was not against the manifest weight of the evidence, we conclude that Appellant's first assignment of error is without merit.
 {¶ 62} Appellant's second assignment of error states:
 {¶ 63} "Appellant's motion to suppress evidence improperly seized by a city of Euclid, Ohio, police officer, was improperly denied by the trial court based on the trial court's demonstrated bias against appellant that is evidenced by the record on appeal, and the officer improperly and unlawfully sought consent to search based on a bogus `suspicious person' report and he was illegally motivated by appellant's criminal record for which appellant had already amply paid his debt to society by serving 17 years in prison."
 {¶ 64} Within the second assignment of error, Appellant asserts three separate arguments. First, Appellant maintains that the trial court demonstrated bias against the Appellant. Second, Appellant argues that Appellant's motion to suppress should have been granted because Officer Doyle improperly and unlawfully sought consent to search Appellant based on a bogus "suspicious person" report. Last, Appellant contends the trial court erred in denying Appellant's motion to suppress because Officer Doyle was illegally motivated by Appellant's criminal record. We find that each of Appellant's contentions lack merit.
 {¶ 65} Appellant first maintains that the trial judge was biased against the Appellant. In asserting this proposition, Appellant contends that the judge demonstrated bias when he required defense counsel to be prepared for trial in six days when defense counsel could not adequately prepare for said trial within that time.
 {¶ 66} Appellant's exclusive remedy if he believed that the trial judge was biased or prejudiced against him at any stage of his case was to file an affidavit of disqualification pursuant to R.C. 2701.03. Id. "The Chief Justice of the Ohio Supreme Court, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced. Section 5(C), Article IV, Ohio Constitution."State v. Mackey (Feb. 14, 2000), Warren App. No. CA99-06-065; see, also,State ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463, 132 N.E.2d 191, paragraph three of the syllabus; Jones v. Billingham (1995),105 Ohio App.3d 8, 11, 663 N.E.2d 657. Accordingly, this court lacks jurisdiction to void the judgment of the trial court because of a judge's bias or prejudice. Beer v. Griffith (1978), 54 Ohio St.2d 440, 441-442,377 N.E.2d 775.
 {¶ 67} Second, Appellant argues that the trial court erred in denying Appellant's motion to suppress because Officer Doyle stopped the Appellant based on a "bogus `suspicious person' report."
 {¶ 68} Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. See State v. McNamara
(1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. An appellate court is to accept the trial court's factual findings unless they are "clearly erroneous." State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 7.
 {¶ 69} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967),389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. These protections are applicable to the states via the Fourteenth Amendment, Mapp v. Ohio
(1961), 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v.California (1963), 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726, and by Section 14, Article I, of the Ohio Constitution which is virtually identical to the Fourth Amendment. See State v. Pierce (1998),125 Ohio App.3d 592, 596, 709 N.E.2d 203.
 {¶ 70} A common exception to the Fourth Amendment warrant requirement is an investigative stop, or Terry stop. Terry v. Ohio (1968), 392 U.S. 1,20 L.Ed.2d 889, 88 S.Ct. 1868. Under Terry, a law enforcement officer may briefly stop and detain an individual for investigative purposes, even without probable cause to act, if he has a reasonable suspicion that "criminal activity may be afoot." Id. at 30; accord United States v.Sokolow (1989), 490 U.S. 1, 7, 104 L.Ed.2d 1, 109 S.Ct. 1581. To justify his suspicion as reasonable, the officer "must be able point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry, supra at 21.
 {¶ 71} A court evaluating the validity of a Terry search must consider "the totality of the circumstances — the whole picture." United Statesv. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. The circumstances are also to be viewed objectively: "Would the facts available to the officer at the moment of the seizure or search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?'" Terry, supra at 21-22. In other words, the court must view the circumstances surrounding the stop "through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86, 87-88,565 N.E.2d 1271.
 {¶ 72} We find that under the circumstances, the officers had the requisite reasonable suspicion to stop Appellant and investigate the situation. Officer Doyle testified that he received a suspicious male call. He explained that "Anthony Coleman called the Euclid Police Department and said that someone was peeking in the windows of his girlfriend's house and she resided at 280 East 200th Street." Further, the report described the suspicious male as a black male wearing a white long-sleeved shirt and black pants, who was walking on 200th Street and then went eastbound on South Lake Shore Boulevard. Officer Doyle responded to the call and drove up South Lake Shore and saw a male fitting the exact description.
 {¶ 73} After viewing the totality of the circumstances, we find that Officer Doyle had a reasonable suspicion that Appellant was engaged in criminal activity necessary in order to stop and investigate the situation. Officer Doyle testified as to specific and articulable facts upon which he based his reasonable suspicion. Further, we are guided to view these facts through the eyes of the reasonable and prudent police officer on the scene. Based on his observations, Officer Doyle was justified in his decision to stop and investigate Appellant.
 {¶ 74} As we have determined that the stop was justified, we now examine Appellant's argument that the trial court should have suppressed all of the evidence obtained as a result of Officer Doyle's pat down of the Appellant as his consent to the search of his person was involuntary. We find the trial court did not err in refusing to suppress evidence obtained pursuant to this pat down. The record fully supports the finding of the trial court that the Appellant voluntarily gave Officer Doyle consent to search his person. Not once did the Appellant testify that he did not voluntarily consent to the search of his person. In fact, he consistently admitted under oath that he agreed to the search. Accordingly, the trial court properly denied Appellant's motion to suppress.
 {¶ 75} Appellant also maintains that Officer Doyle, to receive voluntary consent from the Appellant to search his person, must have given the Appellant Miranda warnings prior to the pat down. The record demonstrates, however, that at the time of the consented pat down, the Appellant was not under custodial interrogation. "Custodial interrogation" has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." State v. Williams,99 Ohio St.3d 493, 505, 794 N.E.2d 27, 2003-Ohio-4396, citing Miranda v.Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. Police, however, are not required to Mirandize everyone they question. Id. "Instead, the question is whether the suspect has been arrested or restrained from movement to the degree associated with a formal arrest." Id., citing California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517, 77 L.Ed.2d 1275.
 {¶ 76} Both Officer Doyle and the Appellant testified that he was not handcuffed or placed in the patrol car at the time of the pat down. Therefore, we find that Appellant was not "arrested or restrained from movement to the degree associated with a formal arrest." See id. Accordingly, because Appellant was not under custodial interrogation, Officer Doyle was not required to give Appellant Miranda warnings prior to the consented pat down.
 {¶ 77} Last, Appellant contends that the trial court erred in denying his motion to suppress because Officer Doyle was illegally motivated by Appellant's criminal record. Both Officer Doyle and Appellant testified that Officer Doyle learned of Appellant's criminal past only after the investigative stop. Furthermore, as stated previously, Appellant consented to the pat down of his person. As such, Officer Doyle could not have been motivated by the Appellant's criminal past when he stopped and searched the Appellant.
 {¶ 78} For the foregoing reasons, Appellant's second assignment of error is without merit.
 {¶ 79} Appellant's third assignment of error states:
 {¶ 80} "The trial court's definition of `stealth' is against the manifest holdings of Ohio courts because the mere fact that Appellant walked up to the front door of a home in full view of a witness for the prosecution, knocked on the door, peered into a window on the door, spent about one minute on the porch, walked off the porch to the side door for a mere 30 seconds and then left the premises could not be seen by any reasonable triar [sic] of fact as `secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'"
 {¶ 81} In this assignment of error, Appellant asserts that any reasonable trier of fact could not have found that Appellant by "stealth" trespassed on an occupied structure. In asserting this proposition, Appellant defines "stealth" as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within the residence of another." State v. Lane (1976), 50 Ohio App.2d 41, 47,361 N.E.2d 535, 540. Appellant argues that the trial court incorrectly applied the facts in finding "stealth." We disagree.
 {¶ 82} In reviewing the record, the trial court did not directly define "stealth," nor did it seem to apply facts to support a finding of stealth directly. Instead, the court applies its factual findings to the crime of attempted burglary as a whole. Nevertheless, we find that the factual findings determined by the court apply to the definition of "stealth." The Appellant's possession of a knit cap with handmade holes, gloves and a screwdriver, coupled with the fact that Appellant peered into the window of Douglas' residence, as well as went to the side of the house to peer into another window, are sly acts used to avoid discovery. Accordingly, Appellant's third assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Gallagher, J., concur.