[Cite as *State v. Casada*, 2016-Ohio-2633.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103362

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LLOYD A. CASADA

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-13-580252-A and CR-15-593718-A

**BEFORE:** Boyle, J., Kilbane, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 21, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Cullen Sweeney
            John T. Martin
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Marcus A. Henry
            Anthony Thomas Miranda
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Lloyd Casada, appeals his sentence. He raises two assignments of error for our review:

> 1. The trial court's personal involvement in the apprehension of the defendant and his statements at sentencing illustrate a judicial bias and/or an appearance of impropriety that violated Casada's due process rights and that require a new sentencing hearing.
>
> 2. The trial court imposed a sentence contrary to law and consecutive sentences without making the requisite statutory findings.

{¶2} Finding no merit to his appeal, we affirm.

## I. Procedural History and Factual Background

{¶3} In December 2013, Casada was indicted on one count of domestic violence with a prior conviction specification (Cuyahoga C.P. No. CR-13-580252-A). Approximately one month later, Casada entered a plea of guilty to an amended indictment of one count of attempted domestic violence in violation of R.C. 2923.02 and 2919.25(A), a felony of the fifth degree. After determining that Casada entered into his plea voluntarily, knowingly, and intelligently, the trial court accepted Casada's plea and found him guilty of attempted domestic violence.

{¶4} At the time of the plea hearing, the trial court stated that there was a warrant out for Casada's arrest in Dayton, Ohio. Casada explained that it was for money that he still owed on an OVI from 2011. Also, while in jail on the current domestic violence charge, Casada pleaded guilty via teleconference to another OVI that occurred in Lakewood. The judge on the Lakewood OVI case imposed a variety of restrictions

involving alcohol treatment.

**{¶5}** In February 2014, the trial court held a sentencing hearing. The state informed the court that the victim said that she did not believe that Casada was a violent person, but that he has a drinking problem that causes him to make poor choices. Defense counsel informed the court that the mitigation report confirmed that Casada has a "severe alcohol problem." According to defense counsel, Casada said that he does not drink often, but when he does, he "gets into a lot of trouble," which was reflected on the number of misdemeanor convictions he had in his presentence investigation report. Defense counsel further reported that since Casada was released on bond, he had been compliant with the Lakewood court's sentencing conditions, including attending AA twice a week and reporting regularly. Casada had also obtained full-time employment as a manager at a Subway restaurant in Bay Village.

**{¶6}** Casada apologized to the victim. Casada further told the court that he knows he has a problem. Upon questioning, Casada told the court that his driver's license had been suspended for five years.

**{¶7}** The trial court then stated that it considered the purposes and principles of felony sentencing, and that it reviewed Casada's criminal history. The trial court told Casada that it was clear that Casada was "a violent drunk who likes to drive." The trial court noted that it was very sensitive to "these issues" based on past circumstances.

**{¶8}** The trial court stated that because the victim in this case requested that Casada not go to prison, it would honor her wishes and sentence Casada to community

control. The trial court then sentenced Casada to two years of community control sanctions under the "special supervision of the domestic violence unit," with the following conditions: (1) 25 hours of community work service, (2) "100% abstinence" from all drugs and alcohol, (3) regular alcohol and random drug testing, and that he would be arrested upon the first positive test, (4) attend four "AA/NA/CA" meetings per week, and provide proof thereof, (5) obtain an AA sponsor and verify, (6) intensive outpatient treatment for substance abuse, (7) maintain verifiable, full-time employment, and provide proof thereof, (8) batterer's intervention and anger management, (8) completion of the "Thinking for Change" program, and (9) participate in TASC case management and assessment, and follow all recommendations.

{¶9} The trial court warned Casada that if he violated the conditions of his community control sanctions, he would sentence him to the maximum prison sentence of 12 months, because although Casada had never served time in prison, he had an extensive record, including many parole violations.

{¶10} On October 28, 2014, Casada was charged with rape and kidnapping in Cleveland Municipal Court. On December 12, 2014, the trial judge in Casada's attempted domestic violence case (Case No. CR-13-580252-A) issued a journal entry requesting that the sheriff's department make "apprehension of [Casada] a top priority" because Casada had been charged with a first-degree felony while still under supervision to this judge for the attempted domestic violence conviction. Casada was arrested on February 25, 2015, and the case was bound over to common pleas court.

**{¶11}** The grand jury indicted Casada on four counts, with two counts of rape, and one count each of kidnapping and gross sexual imposition (Cuyahoga C.P. No. CR-15-593718-A). These charges arose after Casada and a coworker went drinking during one afternoon when they were no longer needed at work. They drank at multiple locations throughout the day. Casada's coworker tried to take Casada home, but he jumped out of her car. The coworker took Casada back to her home to call him a cab. While there, Casada engaged in unwanted sexual acts against her, including cunnilingus and digital penetration. Finally, the coworker was able to get her roommate to help her kick Casada out of her home. She then called the police.

**{¶12}** In July 2015, Casada entered into a plea agreement with the state in Case No. CR-15-593718-A. He pleaded guilty to an amended indictment of one count of sexual battery in violation of R.C. 2907.03(A)(1), a felony of the third degree, one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree, and one count of abduction in violation of R.C. 2905.02(B), also a felony of the fourth degree. The remaining count was nolled. As part of the plea, the parties agreed that the abduction charge would merge with the sexual battery charge, but that the gross sexual imposition would not.

**{¶13}** The trial court held a sentencing hearing and a community control sanctions violation hearing on the same day as the plea hearing. The victim in the sexual battery case was present, but chose not to speak. The state informed the court that it was requesting a lengthy sentence. The state explained that Casada had a prior conviction

out of Avon Lake (the conviction that satisfied the notice of prior conviction specification in the domestic violence case) where he assaulted the mother of his child when he was drunk. The state also stated that in the attempted domestic violence case (Case No. CR-13-580252-A), he assaulted his "then girlfriend" when he was drunk. And now, he sexually assaulted his coworker. The state explained the details of the crimes to the court. The state told the court that young women had been Casada's "prey" in each case. The state further told the court that it intercepted a note from Casada to his mother, where Casada said that he did not commit the offenses. Casada told his mother that the system favored "accusers, and not the accused." Casada also told his mother that juries do not like men because of Anthony Sowell and Ariel Castro. The state opined that this note showed that Casada lacked remorse. The state also said that Casada had no respect for the court based on the fact that he was on probation when he committed these acts.

{¶14} The state then told the court:

This act occurred on October 25, 2014. And a few weeks later he was contacted by the investigating detective, Detective Christina Cottom, C-o-t-t-o-m, and asked to turn himself in. Mr. Casada stated, yes, I'll turn myself in. I'll do it soon. That never happened. He was actually featured on Crime Stoppers. U.S. Marshals had to go out and find him. When they pressured his then 20-year-old girlfriend enough, she revealed where he was at, and apprehended him I think in Westlake.

{¶15} The capias was issued on December 12, 2014. Casada was apprehended on February 25, 2015, almost a full year from when he was granted community control sanctions in the attempted domestic violence case.

{¶16} The court replied: "You know, I distinctly remember this, only because I

was at the court holiday party that evening, and I made a personal phone call to the High-Value Apprehension Unit to make sure Mr. Casada was brought into custody. That was December 12th."

{¶17} Defense counsel then spoke to the court. Defense counsel said that Casada only wrote that letter to his mother because he was trying to make things easier for her because he was concerned about her health. Defense counsel disagreed with the state that Casada did not accept responsibility and did not respect the court; defense counsel said that Casada did both.

{¶18} Casada apologized to the victim and to the court for violating his probation and the trust the court had in him.

{¶19} The trial court stated that it considered the purposes and principles of felony sentencing and the seriousness and recidivism factors in R.C. 2929.12. It then reviewed Casada's criminal history, noting that Casada was found guilty of DUI in 2005, physical control in 2006, criminal damaging in 2008, domestic violence amended to disorderly conduct in 2008, OVI in 2010, OVI in 2011, domestic violence in 2011, violation of a protection order in 2011, tampering with records in 2012, disorderly conduct for being intoxicated in 2012, alcohol in a motor vehicle in 2013, OVI in 2013, and attempted domestic violence in 2013 in front of this same judge. The trial court reviewed the sentence that it gave to Casada in the attempted domestic violence case and told Casada that he "screwed that up in a very big way."

{¶20} The trial court then stated that it considered the recidivism and seriousness

factors, and found prison was "favored" in this case. It noted Casada's extensive criminal history, and how Casada had failed to benefit from services provided in the past, which made Casada a danger to society. The trial court further noted that Casada violated and injured the victim in this case while he was "on "probation to this court."

{¶21} The trial court stated that if Casada was "remorseful about this case," he would have turned himself in to the police. The trial court again noted that Casada was a "violent drunk," who "can't handle alcohol."

{¶22} The trial court sentenced Casada to 60 months in prison for sexual battery, and 18 months for abduction, and ordered that the sentences be served consecutive to each other for an aggregate of 78 months in prison. The trial court then sentenced Casada to 12 months in prison for violating his probation in the attempted domestic violence case, and ordered that it be served consecutive to the 78 months in prison for sexual battery and abduction, for a total of 90 months in prison. The trial court further notified Casada that he would be subject to five years of mandatory postrelease control upon his release from prison and would be classified as a Tier III sex offender. It is from these judgments that Casada appeals.

## II. Judicial Bias

{¶23} In his first assignment of error, Casada contends that the trial court failed to maintain impartiality and was biased against him because the court had indicated that it was very sensitive to "these issues" based on past circumstances, and because the judge made a personal phone call to the "High-Value Apprehension Unit to make sure Mr.

Casada was brought into custody."

**{¶24}** This court lacks jurisdiction to consider Casada's first assigned error. "The Chief Justice of the Ohio Supreme Court, or his [or her] designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." Ohio Constitution, Article IV, Section 5(C).

**{¶25}** R.C. 2701.03 provides the exclusive means by which a litigant may claim that a common pleas court judge is biased and prejudiced. *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph three of the syllabus; *Jones v. Billingham*, 105 Ohio App.3d 8, 663 N.E.2d 657 (2d Dist.1995). Thus, a litigant who believes that the trial judge should be disqualified must file an affidavit of bias or prejudice with the clerk of the supreme court pursuant to R.C. 2701.03. *Id.*

**{¶26}** Because only the chief justice or her designee may hear a disqualification matter, a court of appeals is without authority to void the judgment of the trial court because of bias or prejudice of the judge. *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978). *See also State v. Bacon*, 8th Dist. Cuyahoga No. 85475, 2005-Ohio-6238, ¶ 66.

**{¶27}** We note that Casada was aware from a previous sentencing hearing (held in February 2014) that the trial court was "sensitive to these issues." We further note that although Casada was not aware that the trial court called the "High-Value Apprehension Unit" before the current sentencing hearing, he was aware that the trial court had issued a journal entry in December 2014 requesting that the sheriff's department "make

apprehension of [Casada] a top priority." Thus, if Casada believed that the trial judge should be removed from his case due to bias or prejudice against him, his exclusive remedy was to file an affidavit of disqualification pursuant to R.C. 2701.03. Casada failed to comply with the procedures set forth in R.C. 2701.03, and thus, this court lacks jurisdiction to decide the merits of his first assignment of error.

{¶28} Accordingly, Casada's first assignment of error is overruled.

## III. Consecutive Sentences

{¶29} In his second assignment of error, Casada argues that the trial court failed to make the required findings under R.C. 2929.14(C)(4) before imposing consecutive sentences.

{¶30} R.C. 2953.08(G)(2) provides that our review of felony sentences is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id.* If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

{¶31} R.C. 2929.14(C)(4) requires trial courts to engage in a three-step analysis when imposing consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender."

*Id.* Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*

{¶32} A trial court is required not only to make the statutory findings required for consecutive sentences at the sentencing hearing, but also to incorporate its findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. *Bonnell* further made clear that "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. Indeed, the Ohio Supreme Court expressly rejected the claim that a trial court must give a "talismanic incantation of the words of the statute" when imposing consecutive sentences.

*Id.* at ¶ 37.

**{¶33}** In imposing consecutive sentences, the trial court stated that it was imposing consecutive sentences based on Casada's repeated violent history, and that consecutive sentences were "necessary to protect and punish, [and] would not be disproportionate." The trial court also found that Casada committed the most recent acts of sexual battery and gross sexual imposition while he was under supervision in another case (in front of the same judge).

**{¶34}** Although the trial court did not recite the exact statutory language, the trial court clearly found that "consecutive service is necessary to punish the offender" and that "the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." With respect to the proportionality analysis, the trial court also specifically discussed the seriousness of Casada's actions, and the fact that he had already been afforded many opportunities at probation. Thus, because we can discern from the transcript that the trial court engaged in the correct analysis and that the record supports the findings, we find no merit to Casada's second assignment of error. *Bonnell* at ¶ 29; *see also State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 17.

**{¶35}** Accordingly, Casada's second assignment of error is overruled.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR