The STATE OF OHIO, Appellee,

v.

JACKSON, Appellant.

[Cite as *State v. Jackson* (1996), 110 Ohio App.3d 137.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–95–078.

Decided March 29, 1996.

138

*Alan R. Mayberry,* Wood County Prosecuting Attorney, and *Gary D. Bishop,* Assistant Prosecuting Attorney, for appellee.

*William V. Stephenson,* for appellant.

SHERCK, Judge.

This appeal comes to us from a judgment of conviction and the subsequent imposition of sentence by the Wood County Court of Common Pleas on a charge of carrying a concealed weapon. Because we conclude that the trial court improperly denied appellant's motion to suppress, we reverse appellant's conviction.

Shortly after midnight on December 10, 1994, officers in three squad cars from the Bowling Green Police Department responded to a complaint of a disturbance in Carter Park on the city's east side. When the officers arrived at the park, they observed three cars leaving, including one driven by appellant, Jonathan Jackson, Jr.

Appellant's car was stopped by Officer Eric David, who later testified at a suppression hearing that it was his intention to identify the occupants of the car in case it was discovered that the park had been vandalized or that something else was amiss. The officer also later testified that as he stopped appellant's car he "observed the passenger fumbling with the glove compartment * * * like he was bending down."

The officer asked appellant what he had been doing in the park. According to Officer David, appellant's initial reply was that "he was there due to a fight," but then he amended his statement to say that he was just driving by, saw headlights in the park and decided to investigate. The officer characterized the demeanor of both appellant and his passenger as "very nervous."

Officer David continued his account:

"I then asked him if there were any weapons in the vehicle. Did not look me in the eye and he waited. He hesitated before he gave a rely [*sic*], then he stated he replied no.

"I then asked if he would have a problem with me looking through his vehicle at this point and which elicited a nervous response out of his passenger that kind of looked uneasy and the driver stated to me, Mr. Jackson stated to me that it would take too much time for me to look through his car. I assured him at that point only take a few minutes, just going to be a cursory just a look through. And he said well No, you'll tear up my car.

"I then began to questioned [*sic*] him a little further because of his hesitancy. I explained to him if there was nothing wrong, shouldn't be a problem for me to look through there. And I stated to him he could stand by and watch and anything he felt was unreasonable he would be right there to watch and I would not, I guaranteed I would not tear up his car and take less than three minutes.

"He then made a comment to me that he was, he took American Government and he didn't have to let me search his car. I explained to him, yeah, that is correct. I don't have to search your car. But there is also the possibility of obtaining a search warrant. He then said go ahead and look, and I asked him and his passenger to step from the car. I put him to the front of the car where it was lighted. I patted them down for my safety for any time I perform an inventory search of a vehicle, I'm going to pat down both the driver and passenger while I'm in the compartment of the vehicle.

"* * *

"Then I performed a consent search of the vehicle."

The initial search of the car revealed a black bandanna, folded as a headband; the officer testified that he believed it was "some kind of gang marker or insignia." Officer David also found an eight-round clip of .22 caliber ammunition. The car's glove box was locked.

On further questioning, appellant denied that he had a gun to go with the ammunition magazine. However, he refused to unlock the glove box so that police could search there. At that point, police towed the car and transported appellant and his passenger to the police station. They then acquired a search warrant and opened the glove box. There they found a .22 caliber pistol.

Appellant, indicted for carrying a concealed weapon, pled not guilty. Ultimately, he moved to suppress the contents of the glove box as having been discovered as the result of an unlawful search and seizure. Following a hearing, the trial court denied appellant's motion. It concluded that the initial stop was lawful, the

initial search of the car qualified as either a lawful protective search or a consent search, and that the warrant to search the glove compartment was proper. After the denial of his suppression motion, appellant changed his plea to no contest, was found guilty and sentenced. He now appeals, setting forth the following two assignments of error:

"First Assignment of Error

"The trial court committed reversible prejudicial error by overruling appellant's motion to suppress because the arresting officer lacked reasonable, articulable suspicion to effectuate a traffic stop of appellant's vehicle.

"Second Assignment of Error

"The trial court committed reversible, prejudicial error by overruling appellant's motion to suppress because the arresting officer failed to obtain consent to search which was not impermiss[ibly] tainted by coercion."

In his first assignment of error, appellant complains that Officer David's investigatory stop of his vehicle was unlawful.

The Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution, prohibit any governmental search or seizure, including investigatory stops, unless supported by objective justification. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273; *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694–695, 66 L.Ed.2d 621, 628–629; *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–1879, 20 L.Ed.2d 889, 904–905. The objective justification necessary to support an investigatory stop need not be the probable cause necessary for arrest. It is sufficient that a police officer is able to "point to specific and articulable facts, which, taken together with rational inferences from these facts, reasonably warrant * * * intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *State v. Andrews, supra.* If the totality of the circumstances leads to an objective and particularized suspicion that criminal activity was afoot, an investigatory stop is permissible. *Id.* at 87–88, 565 N.E.2d at 1272–1274.

In the present instance, Officer David was dispatched to Carter Park after midnight to investigate a reported disturbance. Although Carter Park has no posted hours or "no trespassing" signs, it is still unusual for anyone to be in the park at that hour. If Officer David had encountered a car parked there at that time, he would have had reasonable cause to inquire into the occupant's purpose. See *State v. Howard* (Mar. 31, 1993), Lucas App. No. L–92–621, unreported, 1993 WL 93503. The trial court found that when the officer observed three cars emerging from the park late at night, he had specific and articulable reasons to suspect criminal activity, which permitted him to effect an investigatory stop to inquire into the occupants' purpose in the park. While arguably this factual

scenario may go to the very limits of what is reasonable, we will not disturb the trial court's conclusion that these circumstances warranted some sort of minimal intrusion. Accordingly, appellant's first assignment of error is found not well taken.

Appellant's second assignment of error concerns the chain of events which led to the discovery of the firearm in the glove box. The ammunition clip, the circumstances of the investigatory stop and appellant's reluctance to permit police to search the glove box appear to be sufficient indicia for a neutral magistrate to determine that there was probable cause to obtain the search warrant. See *Illinois v. Gates* (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 544; *United States v. Carter* (C.A.D.C.1993), 985 F.2d 1095, 1097. The issue in this assignment of error is whether the warrantless search which led to the discovery of the clip was lawful.

Under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution warrantless searches are unreasonable *per se.* *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 376–377, 373 N.E.2d 1252, 1255–1256. To this basic rule there are but a few specifically established exceptions. The state bears the burden of proving that one of these exceptions applies in order for evidence seized as a result of a warrantless search to survive a motion to suppress. *Id.*

The trial court concluded that the initial search of the car was lawful for two alternate reasons: one, a valid protective search, and two, a proper consent search. Both of these categories of warrantless searches are recognized as exceptions to the warrant requirement.

A protective search is permitted so that police may discover weapons on or near a suspect which might pose a threat to the officer's safety. The reasonableness of a protective search of an automobile was addressed by the United States Supreme Court in *Michigan v. Long* (1983), 463 U.S. 1032, 1045–1052, 103 S.Ct. 3469, 3479–3482, 77 L.Ed.2d 1201, 1217–1222. Following the reasoning established in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the court held that a warrantless protective search of an automobile during a lawful stop is permissible if:

"[T]he police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long, supra,* 463 U.S. at 1049, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220; see, also, *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612.

■ In this case, the police were not aware of any criminal activity in the vicinity when they stopped appellant. There was no testimony that this was a high crime area, nor did the officer observe appellant commit any traffic offense. Similarly, Officer David testified that appellant and his passenger were out of the car at the time of the search. Other than the lateness of the hour and the passenger's "furtive gesture" at the time of the stop, there appear no articulable facts to support a belief by the officer that appellant was dangerous or in a position to gain immediate control of any weapon. The officer did not testify to such a belief, and his actions belie any inference that he might have held such a belief. Accordingly, we cannot agree with the trial court that this search may be justified as a protective search.

■ Notwithstanding our conclusion concerning the trial court's protective search finding, this search may be lawful if the trial court properly determined that it was performed with appellant's voluntary consent. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2058–2059, 36 L.Ed.2d 854, 875–876. The burden of proving voluntary consent is on the prosecution, *id.; Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–1792, 20 L.Ed.2d 797, 802, and must be demonstrated by clear and convincing evidence. *State v. Danby* (1983), 11 Ohio App.3d 38, 41, 11 OBR 71, 74–75, 463 N.E.2d 47, 50–51. Proof of voluntariness necessarily includes a demonstration that no coercion was employed and that consent was not granted "only in submission to a claim of lawful authority." *Bustamonte,* 412 U.S. at 233, 93 S.Ct. at 2051, 36 L.Ed.2d at 866.

The issue of consent in this matter is inextricably tied to the proper extent of the investigatory stop. The scope of detention during such a stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer* (1982), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238. This court has repeatedly held that the lawfulness of the initial stop will not support a "fishing expedition" for evidence of crime. *State v. Smotherman* (July 29, 1994), Wood App. No. 93WD082, unreported, 1994 WL 395128, citing *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099, 1101–1102; *State v. Correa* (1995), 108 Ohio App.3d 362, 670 N.E.2d 1035; *State v. Gonyou* (1995), 108 Ohio App.3d 369, 670 N.E.2d 1040.

■ In this case, Officer David's stated purpose in executing an investigatory stop was to identify the occupants of appellant's car in the event that wrongdoing was discovered in the park. Once he had effected this purpose and no further indicia of criminal conduct were observed, his justification for the stop dissipated. Further detention of a suspect beyond this point amounts to an unlawful seizure of that suspect which can negate the voluntariness of a search consent. *Florida*

*v. Royer, supra,* 460 U.S. at 501, 103 S.Ct. at 1326, 75 L.Ed.2d at 238–239; *United States v. Valdez* (C.A.11, 1991), 931 F.2d 1448, 1452.

By the time Officer David asked appellant for permission to search the car, he had identified the occupants of the vehicle and found no other indicia of criminal conduct. While the officer's first request for such a search might be considered as ordinary police work, once such a request is clearly and definitively denied, the encounter begins to take on a coercive tone. In this case, the officer and appellant engaged in a prolonged colloquy on the issue of police power to search a vehicle. During this time, appellant repeatedly refused the officer permission to search. Yet the officer continued in his pursuit to obtain appellant's consent. It was not until the specter of a search warrant was raised that appellant acquiesced to the search.

Considering the totality of these circumstances, we cannot agree with the trial court that the state proved by clear and convincing evidence that the consent to search was obtained voluntarily. See *United States v. Boukater* (C.A.5, 1969), 409 F.2d 537, cf. *State v. Danby, supra,* 11 Ohio App.3d at 42, 11 OBR at 75–76, 463 N.E.2d at 51–52; *State v. Clelland* (1992), 83 Ohio App.3d 474, 481, 615 N.E.2d 276, 281. Therefore, we conclude that appellant's consent was not voluntary. Accordingly, appellant's second assignment of error is found well taken.

On consideration whereof, the judgment of the Wood County Court of Common Pleas is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK, P.J., GLASSER and SHERCK, JJ., concur.