The STATE of Ohio, Appellee,

v.

PIERCE, Appellant.

[Cite as *State v. Pierce* (1998), 125 Ohio App.3d 592.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA06–810.

Decided Jan. 29, 1998.

BOWMAN, Judge.

Defendant-appellant, Donald E. Pierce, was charged with a single count of possession of a controlled substance in violation of R.C. 2925.11(C)(6)(a). The trial court conducted a hearing on a motion to suppress evidence. The arresting police officer, Bruce Cobb, testified at the hearing concerning the incident. Cobb testified that he has been a police officer for fifteen years and worked in the same precinct for nine years. On September 17, 1996, he and his partner were travelling west on Long Street when he saw appellant standing next to Ronald Gossett in front of Silver's Mini–Mart. Cobb knew that Gossett had been arrested several times on drug charges. Cobb also testified that he knew that both prostitution and drug trafficking offenses have occurred in the area of the mini-mart, and he has made several arrests in that vicinity for those types of violations. Cobb stated that both appellant and Gossett had money in their hands.

Cobb asked his partner to stop the car, and both officers approached appellant and Gossett. Several other people were in the area but left immediately. Cobb asked appellant and Gossett "if everything's all right?" and "what was going on?" Cobb testified that appellant and Gossett replied that they were fine, but did not explain why money was in their hands even though he asked them. Cobb stated that appellant put the money in his pocket. Cobb then asked them if either one had any warrants or any identification with them. Appellant supplied identification, and the officers conducted a warrant check. A radio dispatch informed them that appellant had a possible warrant for his arrest for disorderly conduct, but it needed to be verified. Cobb stated that appellant continued to put his hands in his pockets, and Cobb asked him if he had "anything on him that I [Cobb] should know about." Cobb explained that he believed that drug activity was occurring and asked appellant if he (Cobb) could check his pockets for

narcotics. Cobb stated that appellant replied, "Yeah, sure, go ahead." Cobb searched appellant and found a paper packet with powder in his pants pocket that appellant stated he was holding for a female friend who had left the area when the officers arrived. Appellant was arrested and the powder tested positive for cocaine.

The trial court overruled the motion to suppress, finding a justifiable detention based upon specific articulable facts that a possible drug transaction was occurring and that the search of appellant was based on his voluntary consent. Appellant entered a no contest plea to the charge. The trial court found appellant guilty and sentenced him. Appellant has appealed and raises the following assignment of error:

"The trial court erred when it overruled the defendant's motion to suppress evidence obtained as a result of an unlawful seizure of the defendant and without the voluntary consent of the defendant."

By the assignment of error, appellant contends that the trial court erred in overruling the motion to suppress. Both the Ohio and the United States Constitutions protect against unreasonable searches and seizures. The Supreme Court of Ohio has interpreted Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution as affording the same protection because the sections are virtually identical. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762, 766–767. Thus, the issue is whether this stop and search was unreasonable under the Fourth Amendment.

The Fourth Amendment protects people against unreasonable searches and seizures and requires that searches and seizures be founded upon an objective justification. However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905, fn. 16. The Fourth Amendment is not implicated when a police officer approaches a person in a public place, requests to speak to him, receives permission to do so and then asks questions because the person is free to walk away. *Florida v. Royer* (1983), 460 U.S. 491, 497–498, 103 S.Ct. 1319, 1323–1324, 75 L.Ed.2d 229, 235–237. Nor does the fact that the police officer identifies himself as such elevate the encounter from consensual to a seizure. *Royer*, at 497, 103 S.Ct. at 1323–1324, 75 L.Ed.2d at 235–236. A police officer's request to examine a person's identification does not render an encounter nonconsensual, *Florida v. Bostick* (1991), 501 U.S. 429, 435, 111 S.Ct. 2382, 2386–2387, 115 L.Ed.2d 389, 398, citing *INS v. Delgado* (1984), 466 U.S. 210, 216, 104 S.Ct. 1758, 1762–1763, 80 L.Ed.2d 247, 255; nor

does a request to search a person's luggage, provided that the police do not convey a message that compliance is required. *Bostick, op cit.,* citing *Royer, supra,* at 501, 103 S.Ct. at 1326, 75 L.Ed.2d at 238–239.

■ The distinction between an "encounter" and a "seizure" is that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509.

In *Mendenhall,* at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509, the Supreme Court cited examples of circumstances indicating a seizure even where the person did not attempt to leave, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

■ In *Royer,* 460 U.S. at 497, 103 S.Ct. at 1323–1324, 75 L.Ed.2d at 235–236, the Supreme Court held that a police officer does not violate the Fourth Amendment by merely approaching a person and asking if he is willing to answer some questions. This is the situation involved in this case. Cobb merely approached appellant and Gossett, and asked general questions. Even when Cobb asked appellant for identification, appellant had not been seized.

■ However, a previously consensual encounter may develop into a seizure of the person, and, if an unlawful seizure, the evidence obtained after the unconstitutional seizure would have to be suppressed as the " 'fruit of the poisonous tree.' " *State v. McMillan* (1993), 91 Ohio App.3d 1, 6, 631 N.E.2d 660, 663, quoting *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Once the record check was conducted on appellant and the possibility of a warrant for his arrest was known, even the state concedes that a reasonable person would not feel free to leave and, at that point, appellant was seized.

■ A Fourth Amendment seizure will not be considered as unconstitutional if it was reasonable. *Terry, supra.* To establish the existence of reasonable suspicion for a seizure, a police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* at 21, 88 S.Ct. at at 1880, 20 L.Ed.2d at 906. In this case, Cobb provided specific articulable facts as to why he believed a drug transaction was occurring and the seizure was not unreasonable.

Officer Cobb has been a police officer for fifteen years and has worked in that precinct for nine years. Cobb observed appellant with a known drug offender in

a neighborhood where he had made several arrests for both prostitution and drug trafficking. Both appellant and Gossett were holding money in their hands. When Cobb approached, the other people in the vicinity left. Cobb asked appellant and Gossett general questions. Appellant put the money in his pocket and did not answer Cobb's inquiries concerning the money. Appellant continued to put his hand into his pocket. Cobb testified that with appellant continually putting his hand into his pocket, Cobb became concerned that appellant could have had a weapon or that appellant could eat any narcotics before Cobb could prevent him from doing so. These facts, in addition to the possibility of a possible warrant for appellant's arrest, are specific articulable facts justifying why Cobb believed a drug transaction was occurring, and the seizure was not unreasonable. The Fourth Amendment does not prohibit all searches and seizures, only those which are unreasonable.

Appellant also contends that the search violated his constitutional rights, but the prosecution contends that appellant's consent to the search was voluntary. It is well settled that under the Fourth and Fourteenth Amendments that a search conducted without a warrant that has been issued upon probable cause is *per se* unreasonable, with a few well-delineated exceptions. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, quoting *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. One of these exceptions is a search conducted pursuant to consent. *Schneckloth,* at 219, 93 S.Ct. at 2043–2044, 36 L.Ed.2d at 858, citing *Davis v. United States* (1946), 328 U.S. 582, 593–594, 66 S.Ct. 1256, 1261–1262, 90 L.Ed. 1453, 1460. However, to validate the search, the state must prove, by clear and convincing evidence, that the consent was freely and voluntarily given. *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–1792, 20 L.Ed.2d 797, 802; *State v. Jackson* (1996), 110 Ohio App.3d 137, 142, 673 N.E.2d 685, 688, citing *State v. Danby* (1983), 11 Ohio App.3d 38, 41, 11 OBR 71, 74, 463 N.E.2d 47, 50–51. The issue is a question of fact to be determined from the totality of the circumstances:

" 'Unlike the objective "reasonable person" standard for determining whether there has been a seizure, the standard for determining the voluntariness of a consent is subjective. But evaluating the totality of the circumstances surrounding a purported consent requires consideration of the same factors relevant to a determination of whether there has been a seizure. In addition, the defendant must be aware of that to which he is consenting.' * * * " *State v. Justice* (Dec. 24, 1996), Franklin App. No. 96APA05–616, unreported, 1996 WL 737552, quoting *State v. Lawrence* (Nov. 21, 1995), Franklin App. No. 95APA04–459, unreported, 1995 WL 694486.

"Proof of voluntariness necessarily includes a demonstration that no coercion was employed and that consent was not granted 'only in submission to a claim of lawful authority.'" *Jackson, supra,* 110 Ohio App.3d at 142, 673 N.E.2d at 688, quoting *Schneckloth, supra,* at 233, 93 S.Ct. at 2050–2051, 36 L.Ed.2d at 866.

 Appellant, relying on *Bumper, supra,* argues that if a police officer indicates a claim of authority to conduct the search, the consent obtained is not voluntarily given but merely constitutes an acquiescence in and an acknowledgement of authority. In *Bumper,* the police arrived and told the defendant's grandmother that they possessed a search warrant. The grandmother allowed the police officers to search the house. The Supreme Court found that the grandmother did not give her voluntary consent and stated:

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Bumper,* 391 U.S. at 550, 88 S.Ct. at 1792, 20 L.Ed.2d at 803.

In *Jackson, supra,* a police officer stopped the defendant and asked to search the car. The defendant told the officer that he knew that he did not have to permit the officer to search the car. The officer mentioned the possibility of obtaining a search warrant, and the defendant then permitted the search. The court found that the consent was coerced and not voluntary.

In this case, the police officer indicated that a possible arrest warrant existed for appellant's arrest based on a charge of disorderly conduct, and the police officer asked if he could search appellant's pocket, indicating that he suspected drug activity. As the Supreme Court stated:

"'The transition between detention and a consensual exchange can be so seamless that the untrained eye may not notice that it has occurred. The undetectability of that transition may be used by police officers to coerce citizens into answering questions that they need not answer, or to allow a search of a vehicle that they are not legally obligated to allow.' * * *

"When these factors are combined with a police officer's superior position of authority, any reasonable person would have felt compelled to submit to the officer's questioning. * * *" *Robinette,* 80 Ohio St.3d at 244–245, 685 N.E.2d at 771, quoting *State v. Robinette* (1995), 73 Ohio St.3d 650, 654, 653 N.E.2d 695, 698, reversed, *Ohio v. Robinette* (1996), 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347.

As in *Robinette,* under the totality of the circumstances, in this case a reasonable person would be impliedly coerced into consenting to a search that he was not legally obligated to allow. Once the police officer indicated that an arrest

warrant possibly existed and he suspected drug activity, appellant did not voluntarily consent to the search.

For the foregoing reasons, appellant's assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings in accordance with law and consistent with this memorandum decision.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and PETREE, JJ., concur.