ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-Appellant Brian Simms ("Appellant") appeals from the trial court's denial of his motion to suppress as well as his convictions for drug trafficking and possession of criminal tools. For the reasons set forth below, we affirm.
 {¶ 2} On June 17, 2004, the Cuyahoga County Grand Jury indicted Appellant on three counts: one count of drug possession in violation of R.C. 2925.11; one count of drug trafficking in violation of R.C. 2925.03; and one count of possessing criminal tools in violation of R.C. 2923.24. Appellant pled not guilty on all counts.
 {¶ 3} Prior to trial, Appellant filed a motion to suppress evidence, contending the evidence was discovered as a result of an illegal search and seizure. The trial court held a hearing on Appellant's motion.
 {¶ 4} At the hearing, the state presented the testimony of Officer David Morova who testified that he and his partner, Officer Medwick, received a radio broadcast that a female was screaming in the area near or around 83rd Street and Detroit Road. In response, Officers Morova and Medwick descended upon the area where they saw a small crowd of individuals jumping and screaming "Right down there, right down there." The individuals were pointing east on Detroit Road towards a vehicle. The individuals explained to the officers that there was a vehicle and that it seemed the male in the vehicle was attempting to kidnap or grab a female that was walking next to the vehicle. The individuals explained that the male was pulling the female into the vehicle. Upon hearing this information, Officer Morova peered down the road and saw the vehicle, the silhouette of a male and a female backing up from the vehicle while she was looking at the window.
 {¶ 5} The officers proceeded to pull up behind the vehicle and turned their lights on in order to investigate the situation. The male, later determined to be the Appellant, instantly pulled over and parked the vehicle. The officers then exited the vehicle attempting to speak with the Appellant. At that time, a second patrol car arrived on the scene.
 {¶ 6} Officer Pfeuffer, an officer in the second patrol car, and Officer Medwick began to speak with the Appellant, while Officer Morova spoke with the female. During his conversation, the female informed Officer Morova that she was okay and that she was just fighting with her boyfriend.
 {¶ 7} Officer Pfeuffer testified next at the hearing on behalf of the state. He stated that he received a radio broadcast on the night in question directing him to the area of Detroit because there possibly was a juvenile female being kidnaped. He descended upon the area to assist the other officers in the situation.
 {¶ 8} When Officer Pfeuffer arrived at the scene, Officer Morova and Medwick had already exited their vehicle. Therefore, Officer Pfeuffer and his partner approached the Appellant. As he approached, the Appellant appeared nervous and his hands were moving around. The Appellant stated that he was having an argument and pointed towards the female juvenile who was on the sidewalk.
 {¶ 9} Officer Pfeuffer testified that there were signs of violence at the scene in that the windshield and passenger side window of the vehicle were smashed out. Additionally, the officer noticed a baseball bat in the vehicle. Officer Pfeuffer explained that these signs of violence, and the fact that he received information that this was possibly a kidnaping, led him to be concerned "about the driver and the safety issues for [himself] and the other policeman involved." Therefore, Officer Pfeuffer testified, he ordered the Appellant to place his hands on the roof of the vehicle and conducted a pat down search for weapons of the Appellant's outer clothing.
 {¶ 10} While conducting the search, he "felt something hard in his left front pocket." Officer Pfeuffer further testified, "I asked him what it was. He didn't say anything, so I reached in because it could have been a gun or anything like that. As I reached in to empty his pocket out, a very large bag of what I thought was crack cocaine come out and fell to the ground and also a cell phone was in there." Furthermore, while Officer Pfeuffer was cross-examined, the following discussion occurred:
 {¶ 11} "Q. So therefore, you felt an object in his pocket; you knew it wasn't a gun, didn't you?
 {¶ 12} [Prosecutor]: Objection.
 {¶ 13} "The Court: Overruled.
 {¶ 14} "Q. You knew it wasn't a gun, didn't you?
 {¶ 15} "A. I had no idea. They make small guns."
 {¶ 16} Once contraband was discovered in the Appellant's pocket, the police placed the Appellant under arrest.
 {¶ 17} Ahsia McBride was next to testify and she stated that she was the Appellant's girlfriend. She testified that earlier that day, she smashed out the windows to Appellant's vehicle. He, therefore, went to Ms. McBride's home where the two agreed that Ms. McBride would replace the windows and vacuum the glass from the vehicle. The two were on their way to the car wash to vacuum the vehicle when they began arguing. As a result, Ms. McBride exited the vehicle and started walking towards her friend's house. The Appellant rode along side Ms. McBride in his vehicle, repeatedly asking Ms. McBride to get into the car and she refused. It was during this time that Ms. McBride saw a police vehicle pass the two and then make a U-turn. The police vehicle pulled up behind the Appellant's vehicle and ordered the Appellant to pull over and exit the vehicle.
 {¶ 18} Appellant testified after Ms. McBride, reiterating Ms. McBride's story of the events leading up to the stop. Appellant further testified that once he exited the vehicle, the police ordered him to put his hands on the roof and conducted a search of his pockets. The police entered the Appellant's pocket and found crack cocaine and a cell phone.
 {¶ 19} Following testimony presented at the hearing, the trial court denied Appellant's motion, stating that "[t]he motion to suppress is going to be denied based on the radio broadcast, the crowd reaction, pointing out the area where the alleged incident was occurring with the addition of the movements of the defendant and the alleged female victim being outside the car, with the baseball bat, broken glass, the officers were justified in making an investigatory stop, and further for their own safety patted down the defendant. Therefore, it's going to be denied."
 {¶ 20} As a result of the trial court's decision, Appellant entered pleas of no contest to all three charges. During the plea hearing, the trial court explained the Appellant's rights and waiver of those rights and the prosecutor gave an explanation of the facts. Subsequently, the trial court accepted Appellant's no contest plea and found Appellant guilty on all counts in the indictment. The trial court then ordered a pre-sentence investigation and scheduled a sentencing hearing for September 27, 2004.
 {¶ 21} At the sentencing hearing, the trial court sentenced the Appellant to three years on Count 1, three years for Count 2 and six months on Counts 3, all sentences to be served concurrently.
 {¶ 22} In this accelerated appeal, Appellant submits two assignments of error for our review.
 {¶ 23} The first assignment of error states:
 {¶ 24} "The trial court erroneously denied defendant's motion to suppress because the police officer reached into defendant's pockets without probable cause that Defendant possessed a weapon. The search and seizure was also contrary to law because the identity of the object was not immediately apparent under the doctrine of plain feel."
 {¶ 25} Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. See Statev. McNamara (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. An appellate court is to accept the trial court's factual findings unless they are "clearly erroneous." State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. State v. Harris
(1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7.
 {¶ 26} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v.United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. These protections are applicable to the states via theFourteenth Amendment, Mapp v. Ohio (1961), 367 U.S. 643, 650,81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. California (1963), 374 U.S. 23,30, 83 S.Ct. 1623, 10 L.Ed.2d 726, and by Section 14, Article I, of the Ohio Constitution which is virtually identical to theFourth Amendment. See State v. Pierce (1998),125 Ohio App.3d 592, 596, 709 N.E.2d 203.
 {¶ 27} A common exception to the Fourth Amendment warrant requirement is an investigative stop, or Terry stop. Terry v.Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868. UnderTerry, a law enforcement officer may briefly stop and detain an individual for investigative purposes, even without probable cause to act, if he has a reasonable suspicion that "criminal activity may be afoot." Id. at 30; accord United States v.Sokolow (1989), 490 U.S. 1, 7, 104 L.Ed.2d 1, 109 S.Ct. 1581. To justify his suspicion as reasonable, the officer "must be able point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry, supra at 21.
 {¶ 28} A court evaluating the validity of a Terry search must consider "the totality of the circumstances — the whole picture."United States v. Cortez (1981), 449 U.S. 411, 417,101 S.Ct. 690, 66 L.Ed.2d 621. The circumstances are also to be viewed objectively: "Would the facts available to the officer at the moment of the seizure or search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"Terry, supra at 21-22. In other words, the court must view the circumstances surrounding the stop "through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." State v. Andrews (1991),57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271.
 {¶ 29} We find that under the circumstances, the officers had the requisite reasonable suspicion to stop Appellant and investigate the situation. The officers received a radio dispatch informing them of a screaming woman in the area of 83rd Street and Detroit Road. When the officers arrived near the area, they spoke to witnesses that described a male in a vehicle possibly attempting to kidnap a female. The officers' own observations revealed a man in a vehicle driving slowly near a female walking on the street with the male making gestures towards the female and the female backing away from the vehicle. The officers ordered the Appellant to stop his vehicle and approached the Appellant in the vehicle. They observed signs of violence in that the windows of the vehicle were smashed out and a baseball bat was located in the vehicle.
 {¶ 30} After viewing the totality of the circumstances, we find that the officers had a reasonable suspicion that Appellant was engaged in criminal activity necessary in order to stop and investigate the situation. The detectives testified as to specific and articulable facts upon which they based their reasonable suspicion. Further, we are guided to view these facts through the eyes of the reasonable and prudent police officer on the scene. Based on their observations, the detectives were justified in their decision to stop and investigate Appellant.
 {¶ 31} As we have determined that the stop was justified, we now examine whether a protective weapons search is justified. TheTerry Court held,
 {¶ 32} "Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experiences that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. * * * The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, supra at 27-30.
 {¶ 33} It is well-settled that "where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489, paragraph two of the syllabus.
 {¶ 34} Based upon the totality of the circumstances, we find that the officers had reasonable suspicion that the Appellant was armed, and thus, were permitted to conduct a limited search of the Appellant's outer clothing for weapons. As stated previously, the officers noticed signs of violence in that the eyewitnesses in the area reported a potential kidnaping. Additionally, when the officers stopped the Appellant they noticed that the vehicle's windows were smashed out and there was a baseball bat located in the vehicle. These signs reasonably led Officer Pfeuffer to fear for the safety of himself, as well as others in the area. As Officer Pfeuffer testified, "I was concerned about the driver and the safety issues for myself and the other policeman involved." We find that, based upon the circumstances, Officer Pfeuffer had a warranted belief that he was dealing with an armed and dangerous individual, and therefore, was permitted to conduct a limited search for weapons.
 {¶ 35} During the pat down of the Appellant, Officer Pfeuffer felt a hard object that could have been a gun. Therefore, he reached into the Appellant's pocket and found crack cocaine and a cell phone. Upon discovery of the illegal contraband, the officer arrested the Appellant.
 {¶ 36} Appellant maintains that the search of the Appellant was violative of the Fourth Amendment. Accordingly, the trial court should have suppressed the evidence. We disagree. The court in State v. Evans, 67 Ohio St.3d 405, 618 N.E.2d 162,1993-Ohio-405, held:
 {¶ 37} "When an officer is conducting a lawful pat-down search for weapons and discovers an object on the suspect's person which the officer, through his or her sense of touch, reasonably believes could be a weapon, the officer may seize the object as long as the search stays within the bounds of Terry v. Ohio."
 {¶ 38} Id. at 416. In Evans, the officer reached into the defendant's pocket after he was unable to conclude that the object in the pocket was not a knife or other weapon and found a large wad of money and a little packet of crack cocaine. The officer testified that he did not know whether the defendant had a weapon in his pocket, but that it could have been a knife because knives came in all different shapes and sizes. The court concluded that the officer acted within the scope of Terry. The court explained that "in this case, what later was discovered to be a large wad of money and a little packet of crack cocaine was of such size and density that a reasonable officer could not discount the possibility that it was a weapon." Id. The court stated, "[i]f by touch the officer remains uncertain as to whether the article producing the bulge might be a weapon, he is entitled to remove it." Id., citing United States v. Oates
(C.A.2, 1977), 560 F.2d 45, 62.
 {¶ 39} We find the facts in this case quite similar to those in Evans, supra. In this case, Officer Pfeuffer testified his decision to search Appellant was based upon his objective desire to pursue further investigation without danger to his safety. Officer Pfeuffer further testified that in his opinion the hard object in the Appellant's pocket was possibly a weapon, a small gun. More specifically, Officer Pfeuffer testified that, while conducting the search, he "felt something hard in his left front pocket." Officer Pfeuffer further testified, "I asked him what it was. He didn't say anything, so I reached in because it could have been a gun or anything like that. As I reached in to empty his pocket out, a very large bag of what I thought was crack cocaine come out and fell to the ground and also a cell phone was in there." Moreover, while Officer Pfeuffer was cross-examined, the following discussion occurred:
 {¶ 40} "Q. So therefore, you felt an object in his pocket; you knew it wasn't a gun, didn't you?
 {¶ 41} "[Prosecutor]: Objection.
 {¶ 42} "The Court: Overruled.
 {¶ 43} "Q. You knew it wasn't a gun, didn't you?
 {¶ 44} "A. I had no idea. They make small guns."
 {¶ 45} Based upon his sense of touch, Officer Pfeuffer reached into the Appellant's pocket and discovered crack cocaine and a cell phone. As stated previously, "so long as the search stays within the bounds of Terry, police officers may even seize non-threatening contraband detected through the sense of touch during a protective pat down search." State v. Roberts
(Jan. 20, 1994), Cuyahoga App. No. 63730, citing Minnesota v.Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334. Based upon these facts, the search was justified and well within the protective search exception set forth in Terry v. Ohio,
supra and State v. Evans, supra. Accordingly, the trial court did not err in overruling Appellant's motion to suppress evidence.
 {¶ 46} Appellant also argues that the trial court should have suppressed the evidence of the crack cocaine because the frisk exceeded the limits of "plain touch" when the illegal nature of the contraband was not readily apparent to the officer during the frisk. In making this assertion, Appellant relies on Minnesotav. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130,124 L.Ed.2d 334. This reliance is misplaced. Dickerson dealt with the issue of whether police may search a suspect's pockets during a Terry pat down on the basis of something other than the suspicion that the suspect possesses a weapon. Id. In Dickerson, the Court held, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband." Id. at 375.
 {¶ 47} Dickerson, however, is inapplicable to the instant case. In this case, Officer Pfeuffer searched the Appellant because he had a reasonable belief that the object in Appellant's pocket was a weapon. Therefore, because Officer Pfeuffer retrieved the illegal contraband from Appellant's pocket in an effort to protect himself, the seizure is not impermissible underDickerson. For the aforementioned reasons, Appellant's first assignment of error is without merit.
 {¶ 48} Appellant's second assignment of error states:
 {¶ 49} "Two of the trial court's guilty findings were contrary to law because defendant's pleas of no contest were not accompanied by a factual basis to support all the elements of the offense."
 {¶ 50} In his second assignment of error, Appellant maintains that neither the indictment, nor the prosecutor's were sufficient to charge him with the offenses of drug trafficking and possession of criminal tools because each failed to establish the existence of essential elements of the crimes.
 {¶ 51} Crim.R. 11(B)(2) provides, in part:
 {¶ 52} "The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."
 {¶ 53} "[W]here the indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." State v. Bird,81 Ohio St.3d 582, 584, 692 N.E.2d 1013, 1998-Ohio-606, citing State ex rel.Stern v. Mascio, 75 Ohio St.3d 422, 425, 662 N.E.2d 370,1996-Ohio-93. An indictment sufficiently charges an offense if it mirrors the language found in the charging statute. Id. at 585.
 {¶ 54} Count two of the indictment charged Appellant with:
 {¶ 55} "unlawfully did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution or distribute a controlled substance, to-wit: Crack Cocaine, a Schedule II drug, in an amount equal to or exceeding twenty-five grams but less than one hundred grams, knowing or having reasonable cause to believe such drug was intended for sale or resale by the offender or another."
This language is consistent with that of R.C. 2925.03(A), which states:
 {¶ 56} "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 57} Hence, Appellant's failure to contest the facts alleged in count two of the indictment constituted an admission that the indictment sufficiently charged the offense. The court, therefore, was required to find Appellant guilty of drug trafficking.
 {¶ 58} Count three of the indictment charged Appellant with "unlawfully possessed or had under his control a substance, device, instrument, or article, with purpose to use it criminally, to-wit: automobile and/or cellular phone and/or money, and such substance, device, instrument, or article was intended for use in the commission of a felony, in violation of Section 2923.24 of the Ohio Revised Code." This language mirrors the statutory language in R.C. 2923.24(A), which states "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Therefore, as with the charge of drug trafficking, by pleading no contest, Appellant admitted that the indictment sufficiently charged the offense. Accordingly, the court correctly found the Appellant guilty of possession of criminal tools.
 {¶ 59} In support of his argument that the factual basis fails to meet all of the elements of the offenses, Appellant further maintains that the prosecutor's recitation of the facts did not support several elements of the charges against the Appellant. Appellant argument is misplaced. "In a plea of no contest, the state is not required to prove each element of the crime charged in the indictment beyond a reasonable doubt."State v. Pernell (1976), 47 Ohio App.2d 261, 353 N.E.2d 891, at syllabus. Furthermore, in felony cases, the prosecutor is not required under Crim.R. 11 "to present evidence (make a statement) following a defendant's no contest plea." State v. Simmons
(Sept. 12, 1996), Ross App. No. 95 CA 2107, citing State v.Weiher (June 13, 1990), Gallia App. No. 89 CA 10. Therefore, as the prosecutor had no duty to present a factual basis in support of all the elements of the charges and the indictment sufficiently charged the offenses, Appellant's second assignment of error is without merit.
 {¶ 60} The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Anthony O. Calabrese, Jr., J., concurs.
 Diane Karpinski, J., Dissents. (see Attached DissentingOpinion)
 DISSENTING OPINION