JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the trial court granting the motion to suppress of defendant-appellee, Charles Alexander. We affirm.
 {¶ 2} Alexander was charged in a 12-count indictment with the following: two counts of trafficking in crack cocaine, each with a schoolyard specification; possession of crack cocaine; two counts of trafficking in crack cocaine, each with a one-year firearm specification; two counts of possession of crack cocaine, each with a one-year firearm specification; two counts of possession of cocaine; possession of crack cocaine; having a weapon while under disability; and possession of criminal tools.
 {¶ 3} At the suppression hearing, Detective Eugene Jones testified that he received information from a confidential informant ("CI") that "Charlie" was selling crack cocaine from a house located on Glenville Avenue in Cleveland. The CI told Jones that Charlie drove a gold Chrysler 300. Jones had not previously worked with the CI, who was offering information to Jones to receive consideration for his own pending criminal matter.
 {¶ 4} After receiving the information from the CI, Detective Jones conducted surveillance on Glenville Avenue and saw a gold Chrysler 300 parked near 10522 Glenville Avenue.[1] The vehicle was registered to Charles Alexander at that *Page 2 
address. Jones obtained a photograph of Alexander through the Bureau of Motor Vehicles.
 {¶ 5} On September 14, 2006, Detective Jones had the CI attempt to make a buy from Alexander. The CI purportedly called Alexander's cell phone number to arrange the buy. The controlled buy was unsuccessful, however, because Alexander did not have the quantity of crack cocaine that he allegedly agreed to sell to the CI.
 {¶ 6} During his investigation, Jones did utility checks for 10522 Glenville Avenue and found that the records from East Ohio Gas and the Division of Water were under the name of Mary Alexander. Jones continued to conduct surveillance of the house from September 14, 2006 through November 2006, and several controlled buys from Alexander were attempted during that period, but were never successful.
 {¶ 7} Detective Jones testified that during his surveillance of the house, he saw Alexander enter and exit both the house and vehicle, but admitted that he did not see any pedestrian traffic and movement indicative of drug trafficking. *Page 3 
 {¶ 8} On November 6, 2006, Detective Jones and the CI met and arranged to attempt a controlled buy from Alexander. The CI called a number alleged to have been Alexander's cell phone, while Detective Jones monitored and taped the call.[2] The CI and Alexander allegedly arranged for the CI to buy a quarter-ounce of crack cocaine from Alexander. The CI and Alexander agreed to meet on East 109th Street by a church.[3]
 {¶ 9} When the time for the CI and Alexander to meet came, Jones saw Alexander, driving the gold Chrysler 300, pull in a driveway near the meeting place. The take-down officers were notified and Alexander was stopped. When the police *Page 4 
opened the driver's side of Alexander's car, they saw what they suspected to be crack cocaine in a compartment in the door of the car. They seized the suspected contraband and arrested Alexander. The CI and Alexander never met, and there was no sale of drugs by Alexander to the CI or any other person.
 {¶ 10} Detective Jones testified that Alexander told the police that they could find additional drugs at a home he claimed was his residence on the west side of Cleveland. Upon arriving at the home, however, the police discovered that Alexander did not reside there and there were no drugs in the home.[4]
 {¶ 11} Detective Jones then obtained a search warrant for 10522 Glenville Avenue. Large chunks of crack cocaine, shavings of crack cocaine, two scales, a 12-gauge shotgun with 13 rounds of ammunition, sandwich bags, and $9,800 were recovered during the search.
 {¶ 12} The State presents three assignments of error for our review. *Page 5 
 {¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8. (Internal citations omitted.) However, with respect to the trial court's conclusion of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. Id., citing State v. McNamara (1997), 124 Ohio App.3d 706,707 N.E.2d 539.
 {¶ 14} In the first assignment of error, the State contends that the trial court's findings of fact were "clearly erroneous" and not supported by competent, credible evidence. In particular, the State challenges the trial court's finding that "[t]here was no testimony to support the contention that the phone number called on September 14, 2006, or November 6, 2006, was that of the Defendant or testimony supporting exactly what phone number was called at the time that these `buys' were being attempted."
 {¶ 15} Upon review of the testimony, we find that the trial court's finding was supported by some competent, credible evidence and, thus, we must accept it. In regard to the September 14 attempted controlled buy, the only testimony as to Alexander's cell phone was from Detective Jones as follows: *Page 6 
 {¶ 16} "* * * we contacted him [Alexander] by cell phone and attempted to make a controlled purchase * * *."
 {¶ 17} "* * *
 {¶ 18} "And the only reason that we didn't make a controlled purchase from him on the 14th of September of 2006, * * * is because while monitoring our cell phone conversations between him and my confidential reliable informant he didn't have the amount of crack cocaine that we wanted to purchase."
 {¶ 19} There was no testimony as to what number was called or how that number was linked to Alexander. The trial court's finding in regard to September 14 was therefore proper.
 {¶ 20} Similarly, in regard to November 6, there was no testimony that when the alleged buy was being arranged, the CI called Alexander on his cell phone and actually spoke to him. The testimony that the State relies on in arguing that the trial court erred in its finding was testimony attempting to link Alexander to a cell phone numberafter the police had stopped and arrested him. Specifically, Detective Jones testified that after the search warrant was obtained, and during the search of the Glenville Avenue house, the police found some bills, including a cell phone bill, that had Alexander's name on them. According to Jones, the number on the cell phone bill was the same number at which the CI had contacted Alexander. *Page 7 
 {¶ 21} That after-the-fact attempt to link Alexander to the cell phone number, together with the fact that Detective Jones could not, in fact, state that it was Alexander with whom the CI spoke, supports the trial court's finding.
 {¶ 22} Accordingly, the trial court's finding that there was no testimony that the number called was Alexander's number or exactly what number was called when the buys were being arranged was proper, and the first assignment of error is overruled.
 {¶ 23} The State contends in the second assignment of error that the trial court failed to apply the correct law of reasonable suspicion in ruling on the motion to suppress.
 {¶ 24} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. These protections are applicable to the states via the Fourteenth Amendment. Mapp v. Ohio
(1961), 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v.California (1963), 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726. Section 14, Article I, of the Ohio Constitution is virtually identical to the Fourth Amendment. See, also, State v. Pierce (1998),125 Ohio App.3d 592, 596, 709 N.E.2d 203. *Page 8 
 {¶ 25} A common exception to the Fourth Amendment warrant requirement is an investigative stop, or "Terry stop." Terry v. Ohio (1968),392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868. Under Terry, a law enforcement officer may briefly stop and detain an individual for investigative purposes, even without probable cause to act, if he has a reasonable suspicion that "criminal activity may be afoot." Id. at 30. To justify his suspicion as reasonable, the officer "must be able point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry at 21.
 {¶ 26} A court evaluating the validity of a Terry search must consider "the totality of the circumstances — the whole picture." United Statesv. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. The circumstances are also to be viewed objectively: "Would the facts available to the officer at the moment of the seizure or search `warrant a man of reasonable caution in the belief that the action taken was appropriate?" Terry at 21-22. In other words, the court must view the circumstances surrounding the stop "through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86, 87-88,565 N.E.2d 1271.
 {¶ 27} Here, contrary to the State's assertion, the trial court determined whether the police had reasonable suspicion in their initial approach of Alexander, and found "that the police lacked reasonable suspicion or cause to arrest *Page 9 
[Alexander] on November 6, 2006, or seize any property." Upon review, we find that under the facts of this case, the trial court's finding of lack of reasonable suspicion was proper.
 {¶ 28} In particular, the CI, with whom Detective Jones had never worked, was unable to complete any purchases from Alexander over a two-month period (including on November 6). Further, as already discussed, there was a lack of identification that Alexander was the person with whom the CI spoke on the phone.
 {¶ 29} The trial court used the correct standard and the facts supported its finding under the standard. Accordingly, the second assignment of error is overruled.
 {¶ 30} In the third and final assignment of error, the State argues that the trial court erred by not applying the good faith exception to the exclusionary rule.
 {¶ 31} The good faith exception to the exclusionary rule, adopted by the United States Supreme Court in United States v. Leon (1984),468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, was incorporated into the Ohio Supreme Court's Fourth Amendment analysis in State v. Wilmoth (1986),22 Ohio St.3d 251, 490 N.E.2d 1236, and was reexamined in State v.George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640. As noted inGeorge:
 {¶ 32} "The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers *Page 10 
acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." Id. at paragraph three of the syllabus, citingLeon.
 {¶ 33} The rationale for this good faith exception focuses on the ability of the exclusionary rule to deter police negligence or oppressive conduct:
 {¶ 34} "`The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. * * * Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.'" Leon at 919, quotingMichigan v. Tucker (1974), 417 U.S. 433, 447, 94 S.Ct. 2357, 2365,41 L.Ed.2d 182, 194.
 {¶ 35} In this case, the State has failed to show any good faith on the part of Detective Jones in obtaining the search warrant. In particular, during Jones's two months of surveillance, he did not observe pedestrian traffic or movement indicative of drug trafficking at the residence. In spite of his testimony that he did not observe any such traffic or movement, Jones averred as follows in his affidavit in support of the search warrant:
 {¶ 36} "It is also Affiant's experience that numerous individuals will occupy drug houses. Some persons will be involved with the direct sales, some with the job of *Page 11 
protecting the premises, some with preparing and packaging drugs, and some with the collection of the monies generated from the illegal activity."
 {¶ 37} Further, there is no evidence that the informant, who Jones had never previously used, was reliable; in fact, he was not able to complete any buys with Alexander. Moreover, as already discussed, the State failed to establish that the cell phone number the CI called was Alexander's number, or that the person the CI spoke to was Alexander.
 {¶ 38} Additionally, the arrest of Alexander on November 6 was improper — no sale of drugs or other improper activity occurred. Jones's justification for the stop and arrest of Alexander does not pass constitutional scrutiny. Jones attempted to justify the stop and arrest as follows:
 {¶ 39} "Oh, I had monitored and tape recorded a conversation between my informant and Charles Alexander and I thought I had good cause to believe that he was going to deliver a quarter-ounce or a half-an-ounce of cocaine to 656 East 109th Street. And I based that belief on the fact that we had attempted a controlled purchase in the past and had monitored his conversations and I believed that day that he was going to complete the controlled delivery by bringing the quantity of crack cocaine that he, that my informant asked for to that address that they agreed upon at 656 East 109th Street." *Page 12 
 {¶ 40} Although an offer to sell (as opposed to an actual sale) can constitute drug trafficking under R.C. 2925.03, in this case, the facts are far too tenuous. Detective Jones did not explain why November 6 was any different from the other times the CI attempted (unsuccessfully) to make a controlled buy from Alexander. Moreover, Jones admitted that he had never seen Alexander make a drug sale with anyone else.
 {¶ 41} Based on the foregoing, the trial court correctly refused to apply the good faith exception to the exclusionary ruled and the third assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and PATRICIA A. BLACKMON, J., CONCUR
[1] There was no testimony as to how often and how many hours the Glenville Avenue house was under surveillance.
[2] The tape was played at the suppression hearing, and Detective Jones identified his own voice and the CI's voice on the tape. Detective Jones admitted that he could not testify that, in fact, the CI was speaking with Alexander, as he had never spoken to Alexander himself. According to Jones, though, it was his "opinion" that the person to whom the CI was speaking was Alexander.
The audibility of the tape was poor, and the court therefore "discounted" it during its deliberation.
[3] The church had a school attendant to it, hence the schoolyard specifications in the indictment.
[4] Alexander's mother resided in the home. She initially told the police that Alexander resided there, but then later recanted, telling the police that Alexander actually resided at 10522 Glenville Avenue. The mother was also arrested. *Page 1