JOURNAL ENTRY AND OPINION
Following his pleas of no contest, the court convicted Kenneth Bussey of possession of marijuana and possession of criminal tools in connection with drugs recovered from him by officers of the Drug Enforcement Agency at Cleveland Hopkins Airport. On appeal, Bussey contends the court erred in denying his motion to suppress evidence seized from him at the airport. After careful review of the record and the applicable law, we affirm the judgment of the trial court.
The record reveals that on March 24, 1998, Detectives Deborah Harrison and James Gilchrist, Special Agent Gregory Broderson, and Task Force Officers David Archey and Henry O'Bryant of the Drug Enforcement Agency in Cleveland, along with Detective Gene Cook and drug sniffing dog, Gunner, of the East Cleveland Police Department, had been assigned to the drug interdiction unit at Cleveland Hopkins International Airport. On that day, they received information from Los Angeles agents that Bussey would arrive in Cleveland and that he matches a drug courier profile. When the designated flight arrived, Cleveland agents monitored its arrival, the baggage unloading, and Bussey's activities. Gunner then sniffed several suitcases and alerted to Bussey's luggage, indicating it likely contained a controlled substance. Thereafter, when Bussey claimed the luggage, Detective Harrison approached him and requested consent to search his luggage. Since he did not have the key, Harrison again asked for his consent and upon receiving it, Detective O'Bryant opened one of the suitcases and discovered two large bricks of marijuana. The officers then placed Bussey under arrest, advised him of his rights and escorted him to the DEA office, where they searched the second locked suitcase and located additional marijuana.
The grand jury indicted Bussey for possession of marijuana and possession of criminal tools, consisting of money and a cellular telephone. He moved to suppress the marijuana, and other evidence obtained as a result of the search, but the court denied the motion. Bussey's trial commenced on September 9, 1998 and thereafter, on September 10, 1998, Bussey entered a plea of no contest to both charges and the court found him guilty and sentenced him.
Bussey now appeals and raises the following assignment of error for our review:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO SUPPRESS THE WARRANTLESS SEARCH OF APPELLANT'S LOCKED LUGGAGE AND HOLDING THAT THE SEARCH WAS CONSTITUTIONAL SINCE NO EXIGENT CIRCUMSTANCES EXISTED AT THE TIME OF THE SEIZURE OF APPELLANT AND THE LUGGAGE; AND FURTHER, APPELLANT GAVE FREE AND VOLUNTARY CONSENT TO THE SEARCH OF THE LUGGAGE.
Bussey contends that the trial court erred in failing to suppress the evidence seized from him at the airport because the officers did not have a warrant and he further contends that he did not consent to the search of his luggage.
The state maintains that Bussey voluntarily consented to a search of his luggage and therefore the police did not need a warrant in this instance.
The issue then, presented for our review, is whether the court erred in denying Bussey's motion to suppress.
In State v. Jones (1996), 112 Ohio App.3d 206, stated:
 It is well settled that Fourth Amendment scrutiny is not triggered where a police officer approaches a person in a public place, asks to talk to him, receives permission to do so, and then poses questions to him. * * * [It is] not implicated because the person is not required to answer any of the officer's questions and is free to walk away. * * * Such encounters between the police and citizens are considered consensual encounters and do not involve any coercion or restraint of liberty. * * * Nor does an officer's request to examine a person's identification or for consent to search a person's luggage render the encounter nonconsensual, if the officer does not convey a message that compliance with his request is required. * * * A person is seized within the contemplation of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. * * *
In United States v. Mendenhall (1979), 446 U.S. 544, the court enunciated the following factors to consider in determining whether a seizure has occurred:
 [T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. * * * Absent some evidence that one or more of these circumstances is present, police officers' contact with a citizen cannot, as a matter of law, amount to a seizure of that person.
The court in Mendenhall also delineated several factors in determining whether an individual has freely and voluntarily consented to the requests of a police officer. These factors include, but are not limited to:
 Whether a citizen's path was blocked; whether his ticket or identification was retained; whether there is a threatening presence of several officers; whether there was a display of a weapon by an officer; and whether the officer was in uniform.
Regarding warrantless searches, the court in State v. Jackson
(1996), 110 Ohio App.3d 137 stated:
 Warrantless searches are per se unreasonable unless they fall within an exception. One exception to this rule is when the subject consents. * * * Consent given after the use of coercion, duress, or trickery is not free and voluntary. * * * The government bears the burden of proving consent to the search by clear and positive evidence.
Further, in State v. Clelland (1992), 83 Ohio App.3d 474, the court stated:
 The voluntariness of a consent to the search is a question of fact to be determined under the totality of the circumstances and will not be reversed on appeal unless clearly erroneous.
In this case, the testimony provided at the hearing on the motion to suppress demonstrated that Detective Harrison approached Bussey in the baggage claim area, did not block his path of advance or retreat, that she identified herself as a police officer and asked to speak with him. Testimony also reveals that although she carried a weapon, Detective Harrison never displayed it, and she testified that her clothing concealed it. She asked to see Bussey's airline ticket and identification, immediately returned both to him, and asked for and received his consent to search both pieces of baggage.
Regarding the issue of Bussey's consent to the search of his luggage, the following dialogue took place at the motion to suppress hearing, where Detective Harrison testified to the following:
 Q. After he produces an ID in his name, what if anything did you say to him?
 A. I hand the ID immediately back to him. I asked him would he allow officers to check his bag.
Q. What did he say?
 A. He said "Yes" and at this time I signaled and Detective O'Bryant walked over and attempted to open his bag but the bag was locked. At this point, I asked Mr. Bussey, did he have a key to that bag, to his bags, and he stated no. I again asked him were these his bags.
Q. What did he say to that?
 A. He stated "Yes". I asked him then, would he, again, I asked him would he allow us to check his bag and he stated yes. So, at this time, Detective O'Bryant opened the bags, revealed the two large bricks of suspected marijuana. * * *
The evidence before the trial court therefore, does not suggest the presence of multiple officers who surrounded or blocked Bussey's freedom of movement, nor the presence of weapons used to compel his compliance. Rather, here, Detective Harrison conducted the encounter in a professional, businesslike manner consisting of a request for identification and a request to search his luggage. Further, Detective Harrison's testimony clearly demonstrated that Bussey consented to the search of his luggage and the totality of the circumstances surrounding this search do not illustrate that the officers coerced his consent. Thus, after the discovery of the marijuana in Bussey's luggage, the officers arrested him.
Upon review, we cannot conclude the trial court erred in denying the motion to suppress the evidence. Accordingly, this assignment of error is not well taken and we therefore affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
This Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and LEO M. SPELLACY, J., CONCUR.
 ______________________________ JUDGE TERRENCE O'DONNELL