[Cite as *Toledo v. Powell*, 2014-Ohio-3627.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo/State of Ohio                Court of Appeals No. L-13-1123

    Appellee                               Trial Court No. CRB-12-05022

v.

Sherrie A. Powell                          **DECISION AND JUDGMENT**

    Appellant                              Decided:  August 22, 2014

* * * * *

David Toska, City of Toledo Chief Prosecutor, and Henry
Schaefer, Assistant Prosecutor, for appellee.

Patricia Horner, for appellant.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, Sherrie Powell, appeals the judgment of the Toledo Municipal

Court, sentencing her to one year of probation for failing to inform law enforcement that

she was carrying a concealed weapon at a traffic stop.  We reverse.

## A. Facts and Procedural Background

{¶ 2} The incident giving rise to this criminal appeal occurred at around 3:00 a.m. on March 25, 2012. At that time, appellant was returning home from hosting a party at a Toledo-area club. She was driving along Central Avenue, traveling in excess of the posted speed limit. Three other females were riding in the vehicle with appellant.

{¶ 3} At some point, appellant determined that she needed to make a left turn. Because she was driving in the right lane at the time, appellant needed to merge into the left lane to complete the turn. In doing so, however, appellant nearly collided with an unmarked police vehicle occupied by four detectives.

{¶ 4} After witnessing the near-collision, two Toledo police patrol officers initiated a traffic stop. To do so, the officers pulled behind appellant's vehicle and activated their lights and siren. The detectives in the unmarked police vehicle also stopped. The detectives had recently executed a search warrant at Big Shots Bar in Toledo, and were wearing masks to protect themselves from the tear gas that was dispensed upon their entrance into the bar. As the detectives pulled alongside appellant's vehicle, the driver of the vehicle, Sergeant Morelli, noticed that appellant was reaching toward the glove compartment. He alerted the other detectives of appellant's movement. Fearing that appellant may have been reaching for a weapon, the detectives exited their vehicle with guns drawn, and ordered everyone out of appellant's vehicle. Appellant and the passengers were subsequently placed at the back of the vehicle while the officers

2.

secured the area. Detective Sweat testified that this was done in order to eliminate the possibility that someone would grab a weapon from a compartment inside the vehicle.

{¶ 5} After securing the passengers, appellant was patted down. During that time, Morelli was standing next to appellant, where he was able to detect an odor of alcohol coming from appellant. Further, Morelli noticed that appellant's eyes were "glassy" and her speech was slurred. Meanwhile, Sweat and Detective Boudreaux began to search the vehicle.

{¶ 6} Within two minutes of the initiation of the search, Boudreaux located a firearm in the glove compartment. The individual who was riding in the front passenger seat of the SUV indicated to the officers that appellant had a concealed carry permit. Appellant did not inform the officers that she was in possession of a firearm, nor did she indicate that she held a concealed carry permit.

{¶ 7} As a result of appellant's apparent intoxication and failure to inform the officers that she was in possession of a firearm, appellant was arrested and subsequently charged with, inter alia, one count of carrying a concealed weapon—failure to inform a law enforcement officer in violation of R.C. 2923.12(B)(1), and one count of using a weapon while intoxicated in violation of Toledo Municipal Code 549.03. Appellant entered a plea of not guilty and a jury trial ensued. Upon completion of the trial, the jury found appellant guilty of carrying a concealed weapon—failure to inform a law enforcement officer, and not guilty of using a weapon while intoxicated. The trial court

3.

proceeded immediately to sentencing, and appellant was placed on probation for one year and ordered to pay court costs. It is from this judgment that appellant now appeals.

## B. Assignments of Error

{¶ 8} On appeal, appellant assigns the following errors for our review:

I. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE DEFENDANT WAS DENIED HER RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY WHEN THE TRIAL COURT RESPONDED IMPROPERLY TO A WRITTEN QUESTION BY THE JURY FOREPERSON.

III. APPELLANT'S TRIAL ATTORNEY WAS INEFFECTIVE DEPRIVING APPELLANT OF A FAIR TRIAL.

## II. Analysis

{¶ 9} For ease of discussion, we will address appellant's assignments of error out of order.

## A. Trial Court's Response to Jury Question

{¶ 10} In her second assignment of error, appellant asserts that her right to a fair trial was denied when the trial court responded to a written question from the jury. Specifically, appellant argues that, under *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), the trial court was required to give a supplemental instruction to the jury in

4.

response to the forewoman's, Sherry Scott, statement that she did not believe the jury would be able to reach a verdict as to one of the charges.

{¶ 11} During deliberations, a question was posed to the trial court by the jury. Prior to responding to the question, the trial court engaged in the following discussion with defense counsel and the prosecution:

THE COURT: The Court has received a question, which reads as follows, "What does the law consider a reasonable amount of time to notify law enforcement of a CCW?" It is signed by Sherry Scott. The question came out at 5:08 [p.m.]. Counsel is here. [Defense counsel], are you waiving your client's presence to answer the question?

[DEFENSE COUNSEL]: Yes, I am.

THE COURT: The Court proposes to answer the question by telling the jury that the law does not have a definition by having [sic] a reasonable time. It is solely their province to determine what is a reasonable amount of time. [Prosecution], do you object to that?

[PROSECUTION]: No, Your Honor.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: No.

THE COURT: All right. Let's bring them out and answer this question. We will also tell them that, if they haven't reached a verdict by 6 o'clock, let's consider coming back in the morning.

5.

**{¶ 12}** The jury was subsequently brought into the courtroom, and the following discussion took place:

THE COURT: Mrs. Scott, you sent out a question, which reads as follows, "What does the law consider a reasonable amount of time to notify law enforcement of a CCW?" Is that the Jury's question?

MRS. SCOTT: Yes, sir.

THE COURT: Mrs. Scott, I will tell you, and the other Members of the Jury, that I will answer the question as follows: The law does not have a definition of reasonable amount of time to notify law enforcement. That is solely your province, and to determine that, you have to consider the facts and circumstances of the case. That is the answer.

MRS. SCOTT: Thank you.

THE COURT: If you have not returned with a verdict by 6 o'clock, might I suggest we recess to the morning? Will you consider that?

JUROR 2: We reached a verdict on one.

MRS. SCOTT: I don't think we are going to get a verdict on the other.

THE COURT: Why don't you go back and talk about it? If that is your determination, knock right away and we will reset.

**{¶ 13}** Appellant argues that the foregoing conversation demonstrates "that the jurors did not understand how they were to approach reaching the verdicts and recording

6.

the verdicts in the case." Consequently, appellant argues, the trial court should have provided a supplemental instruction to the jury to deal with the confusion they were experiencing. To the contrary, the state contends that a supplemental instruction was not necessary because the jury was not deadlocked at the time the discussion took place.

{¶ 14} Under *Howard*, a supplemental instruction should be given by the trial court to the jury upon a determination that the jury is deadlocked on the question of conviction or acquittal. *Howard* at paragraph one of the syllabus. The substance of the instruction was set forth in *Howard* as follows:

> The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a

7.

disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors. *Id.* at paragraph two of the syllabus.

{¶ 15} The decision to provide a *Howard* instruction is within the sound discretion of the trial court and, therefore, will not be reversed absent an abuse of that discretion. *State v. Witcher*, 6th Dist. Lucas No. L-06-1039, 2007-Ohio-3960, ¶ 28. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 16} Here, we find that the trial court did not err in responding to Scott's concern that the jury was not going to get a verdict on one of the charges. When read in its context, it is clear that Scott's statement was not meant as a statement that the jury was deadlocked. Instead, the statement was made in response to the trial court's suggestion that the jury recess for the evening if they were unable to reach a verdict on both charges

8.

by 6:00 p.m. Since it was already after 5:00 p.m. when the discussion took place, Scott was indicating to the court that the jury was unlikely to reach a decision by 6:00 p.m., not that the jury would be unable to reach a decision altogether. Thus, because the jury was not deadlocked at the time, a supplemental instruction was not necessary. *State v. Minnis*, 10th Dist. Franklin No. 91AP-844, 1992 WL 30720, *4 (Feb. 11, 1992) (stating that a *Howard* instruction is to be given to a jury "when a determination has been made that the jury is deadlocked in its decision").

{¶ 17} Accordingly, appellant's second assignment of error is not well-taken.

## B. Ineffective Assistance of Counsel

{¶ 18} In her third assignment of error, appellant argues that she was deprived of the effective assistance of trial counsel.

{¶ 19} To support a claim for ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694. In *Strickland*, the United States Supreme Court opined,

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. *Id.* at 697.

{¶ 20} Here, appellant asserts that trial counsel was ineffective because he did not request a *Howard* instruction, failed to preserve his definition of "promptly" for the record, and failed to file a motion to suppress.

{¶ 21} Concerning the *Howard* instruction, we have already determined that such an instruction was unnecessary because the jury was not deadlocked. Thus, counsel's failure to request such an instruction was not unreasonable under the circumstances.

{¶ 22} As to appellant's assertion that trial counsel was ineffective for failing to preserve the record, we find that appellant was not prejudiced by counsel's efforts. Indeed, the definition that was included in the jury instructions was the definition proffered by defense counsel. The trial transcript contains the following discussion, which took place outside the hearing of the jury at the close of evidence:

> THE COURT: And I have one carrying concealed weapons. You have not agreed on that?

> [DEFENSE COUNSEL]: That's correct. Well, there are two definitions of promptly. The first one is the one that I think is appropriate. I believe the second one is the one that the City believes is appropriate.

> [PROSECUTION]: The source for the definitions are both Black's Law Dictionary. The first one, the longer definition, is from your copy and the other shorter definition, is from a more modern, newer version of

Black's Law Dictionary. I believe, the key distinction is the language, as the case may apply. There is some phrases about that distinction.

THE COURT: I note what the City says. I think the sentence that reads, the meaning of the words language on the facts in each case is very important and applicable in this case. So we will give the first defense.

{¶ 23} Notably, defense counsel's definition of "promptly" was considered and adopted by the trial court for use in the jury instructions. Moreover, out of the two definitions that were proffered, defense counsel's definition was the most favorable to appellant. Therefore, we find that appellant was not prejudiced by defense counsel's failure to preserve the record.

{¶ 24} Next, we turn to appellant's argument that defense counsel was ineffective for failing to file a motion to suppress.

{¶ 25} We note at the outset that failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35.

{¶ 26} Here, appellant argues that defense counsel should have filed a motion to suppress regarding the stop and search of the vehicle. In particular, appellant asserts that

11.

the warrantless search of her vehicle constituted an unreasonable search under the Fourth Amendment. The state responds by arguing that the initial stop of the vehicle was permissible based on appellant's testimony that she was speeding. As to the search of appellant's vehicle, the state contends that "[o]nce stopped, the police had the right to search the vehicle for any weapons that would have been within reach of any of the many passengers within the vehicle."

{¶ 27} The Fourth Amendment generally prohibits unreasonable searches and seizures with limited exceptions. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Warrantless searches conducted outside these exceptions are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶ 28} With regard to the basis for the stop, several officers testified that appellant abruptly changed lanes as she was driving along Central Avenue, nearly causing a collision with the detectives. Regarding appellant's operation of her vehicle, Detective Whatmore stated: "I saw an SUV * * * coming up on our right and it cut us off. It swerved into our lane, real quick, and cut us off and our driver — our sergeant, who was driving, was able to keep control of our vehicle. And at that time, we were all a little stunned." Sergeant Morelli testified that appellant's vehicle "came up, actually, in our lane at a high rate of speed and swerved to the other lane and swerved back over and cut us off." In light of such testimony, we find that the officers had reasonable suspicion to believe that appellant had committed a traffic offense. Further, appellant testified that she was speeding at the time she was pulled over by the police. Thus, we find that the

12.

initial stop was not unreasonable under the Fourth Amendment. *See Terry* at 22 (concluding that a police officer may conduct an investigatory stop based upon reasonable suspicion that the person stopped is involved in criminal activity).

{¶ 29} Having concluded that the stop was permissible, we now turn to the constitutionality of the subsequent search of appellant's vehicle. A protective search is permitted so that police may discover weapons on or near a suspect which might pose a threat to the officer's safety. The reasonableness of a protective search of an automobile was addressed by the United States Supreme Court in *Michigan v. Long*, 463 U.S. 1032, 1045-1052, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). There, the court held that a warrantless protective search of an automobile during a lawful investigatory stop is permissible if "the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* at 1049, citing *Terry*, *supra*, at 21.

{¶ 30} In this case, appellant was pulled over for speeding and driving erratically. While in the process of stopping appellant, Morelli noticed appellant moving toward the glove compartment. The officers then secured the area by ordering the occupants out of the vehicle and placing them at the back of the vehicle. There was no testimony at trial that the officers feared for their safety at the time of the search. Indeed, the only articulable reason for the search was appellant's movement around the glove compartment during the stop. Such movement, standing alone, does not give rise to a

13.

reasonable belief that appellant was armed and dangerous. *See State v. Meeseman*, 6th Dist. Wood No. 93-WD-015, 1993 WL 513187, *4 (Dec. 10, 1993) ("While furtive gestures may combine with other facts to create a reasonable inference that an individual may be a threat to an officer, such gestures, standing alone, do not justify a warrantless search."); *State v. Jackson*, 110 Ohio App.3d 137, 673 N.E.2d 685 (6th Dist.1996) (concluding that the trial court erroneously denied the defendant's motion to suppress a protective search where the search was based strictly upon the "lateness of the hour and the passenger's 'furtive gesture' at the time of the stop"). Therefore, we conclude that the search was not justified as a protective search under *Long* and its progeny.

{¶ 31} Notwithstanding the foregoing, the state argues that the evidence should not be suppressed because it would have been inevitably discovered in any event. The inevitable discovery rule allows the admission of illegally obtained evidence where "it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985), syllabus, *adopting the rule set forth in Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. The state bears the burden of showing "within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct." *Perkins* at 196. Proof of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Williams* at 444. Here, the state contends that the evidence would have been discovered upon a LEADS check in which appellant's license

14.

to carry a concealed weapon would have been revealed. While it may be true that the officers would have questioned appellant as to whether she was carrying a concealed weapon upon learning of her license to do so, whether she would answer in the affirmative is a matter of pure speculation. Had she indicated to the officers that she was not carrying a concealed weapon, they would have had no constitutionally valid reason to search the vehicle to discover the firearm.

{¶ 32} Under these facts, we find that a reasonable probability exists that but for counsel's error, the evidence obtained as a result of the protective search would have been suppressed. Further, we find that defense counsel was ineffective for failing to move the trial court to suppress the evidence.

{¶ 33} Accordingly, appellant's third assignment of error is well-taken.

### III. Conclusion

{¶ 34} For the foregoing reasons, appellant's conviction is vacated and the judgment of the Toledo Municipal Court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this decision. The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                                    JUDGE

Thomas J. Osowik, J.

                                            _____
Stephen A. Yarbrough, P.J.                                     JUDGE
CONCUR.

                                            _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.